**BRAZOS RIVER CONSERVATION & REC-LAMATION DIST. et al. v. COSTELLO et al.**

**No. 2121.**

Court of Civil Appeals of Texas. Eastland.

July 3, 1940.

Rehearing Denied July 19, 1940.

John D. McCall and Millard Parkhurst, both of Dallas, Samuels, Foster, Brown & McGee, of Fort Worth, L. D. Hawkins, of Breckenridge, Strasburger, Price, Holland, Kelton & Miller, of Dallas, and T. T. Bouldin, of Mineral Wells, for appellants.

Ritchie & Ritchie, J. R. Creighton, and W. H. Penix, all of Mineral Wells, for appellees.

FUNDERBURK, Justice.

E. P. Costello and other property owners brought this suit against Brazos River Conservation and Reclamation District, the Directors thereof, and others, seeking to enjoin, first, temporarily and upon final hearing, permanently, the flooding of plaintiffs' lands and other property, or permitting same to be done, by closing openings in the Possum Kingdom Dam on the Brazos River left temporarily for the purpose of avoiding such effect during the construction of said dam.

Briefly stated, the ground of relief sought was that such lands and other properties would, upon the threatened closing of said openings, thus effecting the completion of the dam, flood and inundate said properties, thereby constituting a taking thereof for public use without the consent of the owners, and without payment for, or condemnation of, said property.

After temporary injunction had issued, the court, overruled a motion to dissolve it, following a hearing of evidence limited to a question of the value of said properties, supplemented by a stipulation of the parties adopted as a finding of fact by the court that "at the time of the issuance of the temporary injunction on March 6, 1940 the several plaintiffs were the owners of and in actual physical possession and occupancy of their several properties as described in the original petition herein, and that the defendant Brazos River Conservation and Reclamation District had not acquired said properties, or any of them, by purchase or condemnation, and that said district was not at said time, or at any time prior thereto, and is not now, in actual physical possession of said properties, or any of them, and has not since the issuance of said injunction acquired by purchase or condemnation, or otherwise, any of said properties. That at the time of the issuance of said writ of temporary injunction, the defendant district and its co-defendants had practically completed the dam * * * except for certain temporary openings left in said dam for the purpose of permitting the waters of the stream to flow through said dam during the period of construction, and at the time of the issuance of said temporary writ of injunction said defendant district and its codefendants were engaged in the work of closing said openings; and that as the result of the closing of such openings, the lands and properties of the plaintiffs would have been flooded and inundated and covered by the waters of the reservoir impounded by the said dam; and that the closing by said defendants of such openings at this time, or at any time hereafter, will result in the flooding, inundating and covering of the said properties by the waters of said reservoir."

The court, solely upon the conclusion that R.S.1925, Art. 3269, as amended, Vernon's Ann.Civ.St. Art. 3269, was not applicable, overruled the motion (two motions by different defendants) to dissolve the temporary injunction, thereby continuing it in effect.

The judgment also declared that in the event upon appeal it should be determined that said district is entitled to dissolution of the injunction, conditioned upon the deposit of money, or that the defendant district is entitled to maintain its cross-action for condemnation then "the court finds from the evidence introduced herein relat-

ing to values of the property that as a prerequisite to. the dissolution of said injunction said District shall pay into the registry of the court, or depository to be designated by the court, the sum of $500,000 for the security of the parties" in the various sums stated. From such order the defendants have appealed, and, upon motion, the submission has been advanced.

■■ Under the evidence and the findings based upon stipulations of the parties, it appears that the occasion for bringing this action was that the properties of the plaintiffs were threatened with being taken for public use, without the consent of the owners, and without having been either purchased or condemned. In McCammon, etc., Lumber Co. v. T. & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247, 248, 36 L.R. A.,N.S., 662, Ann.Cas.1913E, 870, concerning certain action involved in that case, it was said that if such action "will constitute a taking, the facts that it is without consent and that compensation has not been made render it unlawful, so that the property owner has the right to prevent it by injunction." When a person's property is threatened with being taken for a public use, it makes no difference whether such public use is for the State or not, as affecting the right to an injunction by the owner of the property, when such owner has not consented to its taking and the property has been neither purchased nor condemned. Condemnation, when necessary to a lawful taking, implies some prescribed procedure complying, among other things, with Art. I, sec. 19, of the Constitution of Texas, Vernon's Ann.St., declaring that no citizen shall be deprived of property except by "due course of the law of the land" and with the Fifth Amendment to the Constitution of the United States, forbidding that persons "be deprived of * * * property, without due process of law" or that "private property be taken for public use, without just compensation."

There is no question presented of the Legislature's having attempted to authorize a taking of the property contrary to limitations imposed by constitutional provisions, except with reference to the provisions of Vernon's Ann.Civ. Statutes, Art. 3269. The Constitution, art. 1, § 17, plainly provides that "No person's property shall be taken * * * for * * * public use without adequate compensation being made, unless by the consent of such person"; and

that provision, it is believed, is not qualified by any other.

In determining the necessary condemnation procedure applicable to the properties in question, the following statutory provisions must be considered: (1) Section 13a, Acts 1934, 43d Leg. 4th c. s., p. 3, ch. 3, as amended by Acts 1935, 44th Leg. 1st c. s., p. 1527, ch. 368, Vernon's Ann.Civ.St. title 128, c. 8 note; (2) Vernon's Ann.Civ.Statutes, Art. 8197f; (3) R.S. 1925, Arts. 3264, 3268 and 3269, as amended, Vernon's Ann. Civ.St. Arts. 3264, 3268 and 3269. Without quoting said provisions, but merely stating their effects as material to the question under consideration, we may say that said sec. 13a, a part of the Act creating the Brazos River Conservation and Reclamation District, confers generally the right of eminent domain to be exercised "in the manner provided by General Law with respect to condemnation, or at the option of the district, in the manner provided by Statutes relative to condemnation by Districts organized under General Law pursuant to Section 59 of Article 16 of the Constitution of the State of Texas." It is further provided that "In condemnation proceedings, being prosecuted by said District, the District shall not be required to give bond for appeal or bond for costs."

Said Vernon's Ann.Civil Statutes, Art. 8197f, relates to Conservation and Reclamation Districts, but applies exclusively to cemeteries and burial grounds. This is inapplicable to the facts here involved and we mention it only as being so far as we can find the subject referred to in the language above quoted, namely, "Or at the option of the district, in the manner provided by Statutes relative to condemnation by Districts organized under General Law pursuant to Section 59 of Article 16 of the Constitution of the State of Texas." It must be admitted, however, that the reference is not apt; but if there be other statutes referred to none such have been cited as authority in this case, nor have we found any.

■ Revised Statutes, 1925, Art. 3264, as amended, Vernon's Ann.Civ.St. Art. 3264, provides the familiar procedure for condemnation, consisting of an application for, and appointment of, commissioners, notice, hearing, award, etc. Article 3268 applies alike to the State, municipal subdivisions, persons, and corporations, except that "The State, a county, municipal corporation, irrigation district, water improve-

ment district or water power control district created under authority of law, shall not be required to deposit a bond or the amount equal to the award of damages by the Commissioners as provided in Section 2 hereof." Plainly this exception does not affect the requirement of section 1 that the condemnor shall pay to the defendant the amount of damages awarded or adjudged against it by the commissioners, or deposit the same in money in court subject to the order of the defendant, and also pay the costs awarded against it. Whether under Constitution Art. 1, sec. 17, the Legislature would have the power when one's property is taken for the use of the State to exempt the State, or municipal corporation, or state agency representing the state, from paying the amount of an award or depositing the amount thereof in court before the property is taken, is a question not necessary for us to determine. The fact is that the condemnation procedure which has been provided by the Legislature makes no such exemption, but provides to the contrary. Art. 3268, supra. In regard to the power of the Legislature with reference to such exemption, it was said in Travis County v. Trogdon, 88 Tex. 302, 307, 31 S.W. 358, 359, 360, that "it [the Legislature] may not deem it proper to exercise such power, but may require payment in advance, as in other cases, or may require payment in advance on condition that the owner will accept the compensation fixed by the commissioners' court."

We have no doubt that under the plain provisions of said Art. 3268, as interpreted in the case cited, if condemnation had been sought in the regular way, said District would have had to pay or deposit the amount of the award of the commissioners as a condition upon its right to take such properties for public use, even for use of the State.

Having reached the conclusion that there was no error in the action of the court in refusing to dissolve the temporary injunction insofar as that question could be affected by the laws prescribing the applicable condemnation procedure generally, we pass now to consider whether the trial court, independently of that procedure, was authorized in response to defendants' cross-action to adjudge condemnation of the properties under authority of said Art. 3269.

But, first answering a contention of the appellants, we may say we fail to see any substantial basis for a distinction between a county and the Brazos River Conservation and Reclamation District as affecting the question of whether the taking is for the use of the State, rather than merely for a public use. It seems to be settled that the taking of property for a public road in an action instituted by a county is a taking for the use of the State. Travis County v. Trogdon, supra. The objects and purposes declared in the Act creating said District, and the declaration therein that it is a governmental agency seem to leave no escape from the conclusion that such taking is for the use of the State.

Whether said Art. 3269 is applicable as authority to authorize condemnation in this suit is a question of some difficulty involving also, if applicable, the further question of its validity. The article reads thus: "When any person, or corporation, or district, or association of persons having the right of eminent domain are sued for property or for damages to property occupied by them or it for the purposes for which it or they have the right to exercise such power, or when a suit is brought for an injunction to prevent them or it from going upon such property or making use thereof for such purposes, the Court in which such suit is pending may determine the matters in dispute between the parties, including the condemnation of property and assessment of damages, upon petition or cross-bill asking such remedy by defendant, and such petition or cross-bill asking such relief shall not be an admission of the plaintiff's title to such property, and in such event the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he or it fails to establish such claim; and provided that, if injunctive relief be sought, the Court may grant such relief under the Statutes and Rules of Equity or may, as a prerequisite for denying such relief, require defendant to give such security as the Court may deem proper for the payment of any damages that may be assessed on defendant's cross-bill for condemnation."

If applicable and valid this statute provides a procedure for condemnation complete in itself, and alternative to that provided in the preceding Articles 3264 to 3268, inclusive. Prior to an amendment in 1931 said article 3269 read as follows: "When those having the right of eminent domain are sued for property or for dam-

ages to property occupied by it for the purpose for which it has the right to exercise such power, the court in which such suit is pending may determine all matters in dispute between the parties, including the condemnation of property, upon petition or cross-bill asking such remedy by defendant, but the plea for condemnation shall be admission of the plaintiff's title to such property." R.S.1925, Art. 3269.

■ The first inquiry is: What is meant by the words "such property" in the clause "or when a suit is brought for an injunction to prevent them or it from going on *such property* or making use thereof for such purposes" etc.? (Italics ours.) The only previous use of the word *property,* it is to be observed, is limited by the words "occupied by them or it." It would be entirely clear that by the words, *such property,* reference was intended to "property occupied or used by" the defendant, but for the statement indicating the nature of the injunction as being (1) to "prevent them or it from going upon" the property, or (2) "making use thereof." The question thus suggests itself: Why speak of enjoining a person or district, etc., to prevent his or its going upon or making a particular use of property already occupied by the defendant for the purpose of such use? On the other hand, if it was intended to make the injunction provision available in cases where the property was not occupied by the defendant, the word *such* would seem to be meaningless, an effect to be avoided, if possible. As a modification of the word *property* it could not refer to "property sued for", or for injury to which damages are sued for, because an injunction would be in lieu of, and complete subsitutition for, a suit for the property or for damages to the property. The only other thing the word *such* could refer to would be "property occupied" by the defendant. There is, therefore, presented, to say the least, an ambiguity in the words "such property."

■■ If an owner of property in the possession thereof finds it suddenly occupied by a naked trespasser, such as a person or corporation having the power to condemn it, but who, without the owner's consent and without purchasing or condemning it, has taken possession of it would undoubtedly be, is his only remedy a suit for the property or damages to the property? Would he not, in lieu of any such action, be entitled to an injunction to rid his property of further occupancy by the trespasser, or of use for the purposes which the trespasser has the right to condemn it but has not done so? We think such a remedy would exist. At least, in some cases, as where there has just begun an occupancy, or use of the property for a purpose for which it could be condemned, which works no destruction of the property, nor subjects it to any material damage, we think an injunction would be available to the owner "to prevent [the trespasser] * * * from [further] going upon such property" or "making use thereof for such purposes." In such case, the remedy by injunction, we think, would be practically the equivalent of the other actions to recover the property or damages to the property. An unlawful entry of a trespasser upon land, in possession of the owner, does not necessarily work a dispossession of such owner. Hence, we think, it cannot be said that there is any fatal inconsistency in construing the words "such property" as referring to property occupied by the defendant agreeably with the natural purport of the language.

■ Before said 1931 amendment of R. S.1925, Art. 3269, its sole application was to suits for property and suits for damages to property occupied by a defendant who, possessing the power of eminent domain, was occupying the property for such purposes. That procedure was evidently designed for cases in which the occupancy by the defendant was under some claim of right, such, for example, as where the defendant had purchased the land from a third party, or had condemned it as the land of a third party, or prior condemnation proceedings were for some reason claimed to be void, etc. It is clear from a reading of the statute that a condemnation of the property in the suit was only a part of "all matters in dispute between the parties" which the court was authorized to determine. When by said amendment injunction was included with said other actions, the court was still authorized, as before, to determine the *matters in dispute between the parties,* including condemnation of property and assessment of damages. Provision was made permitting the condemnor to "assert his or its claim to such property" and to "ask in the alternative to condemn the same if he or it fails to establish such claim" without (as formerly) being bound by such action to an admission of plaintiff's title to the property.

It seems to us, not an unreasonable interpretation of the statute, that by the amendment of 1931 it was intended merely to extend the former law to include actions for injunction, but as affecting the same subject matter and under the same conditions, namely, property occupied by the defendant presumably under some claim of right thereto for purposes for which the right of defendant to a condemnation of it existed.

On the other hand, if the purpose of the amendment was to permit condemnation independently of the fact of occupancy by the defendant, or under circumstances such as exist in this case, there would seem to be little reason ever to resort to the most usual procedure provided by law for such purpose. The statute, it is to be observed, is by its terms applicable alike to all persons, corporations, or governmental agencies having the power of eminent domain. Why, it may be asked, should an electric light corporation, of private ownership, institute numerous condemnation proceedings when by advertising its purposes to take property without purchase or condemnation of same it could, by such threat of a naked trespass, practically force actions against it for injunction and therein procure condemnations unhampered by any such restrictive provisions, such as that upon an award being made the condemnor must pay or deposit the amount of the award, and additional thereto, an amount equal to the award, plus costs?

In such a suit what would constitute the matters in dispute? What dispute exists to be litigated between the owner of property and even the State itself, merely threatening to take such property without the consent of the owner, and without even an offer to pay anything therefor, or to procure its condemnation? It seems to us in such case there is utterly lacking any such matters in dispute as are contemplated by the terms of the statute. Whether the suit be one for the recovery of property, or of damages thereto, or for an injunction to enforce the right of the owner to preserve it from trespassers, the statute contemplates, we think, some character of occupancy by the defendant and some matter of dispute other than the right of the defendant to have the property condemned.

We are of the opinion that such interpretation of the statute is required for another reason. If the statute applies to a situation where the defendant has acquired no apparent rights in the property, such as an occupancy thereof for a purpose for which it possesses the power of eminent domain, and, where, therefore, as we think, there exists no matter in dispute between the parties requiring litigation, the statute would, we think, be void because of the absence of any provision constituting due process of law by which the property owner is to be certainly compensated for the taking of his property. In Buffalo Bayou, B. & C. Ry. Co. v. Ferris, 26 Tex. 588, it was said that "The language of the constitution most certainly indicates that the taking of private property, and the making of compensation, shall be concurrent acts." That was said in reference to the provisions of a former constitution, but a distinction even then was recognized between a taking for the use of the state and a taking for a public purpose by private interests, not considered as being inconsistent with the proposition above quoted. It was further said: "The property must be paid for when taken, or within a reasonable time thereafter; and the making of compensation must be as absolutely certain as that the property is taken. * * * The State is as impotent as an individual to take private property for any purpose without the owner's consent, unless adequate compensation is made for it." It was further said: "Nor is it any answer to this proposition to say that the taking of his property is not illegal, because the constitution has guaranteed to him compensation for it, and the legislature is bound to secure it to him, and this may be done by a future act. But is the obligation, we may ask, to make him compensation any stronger upon a future legislature than it was on that one by whose authority his property has been taken; and if it has failed to make a constitutional provision for his compensation, what assurance can he have that any future one will do so? It was, however, to place the rights of property upon higher grounds than the mere legislative sense of justice and equity, that this prohibition upon legislative power was embodied in the bill of rights."

We have quoted from this decision to show the background of our present constitutional provision on the subject—Art. 1, sec. 17, of the Bill of Rights. In Travis County v. Trogdon, supra, decided under the present Constitution, it was pointed out that prior to the present Constitution the former constitutional provision had been construed "as not requiring payment

to be made before or at the time of the taking of the property in either class of cases." The reference was to property taken by private concerns for public use and property taken for the use of the State. It was said that such construction of the constitutional provision had been adopted by the Supreme Court "with the qualification that, *at the time of taking* the property, adequate provision must be made to insure the speedy payment of the compensation." (Italics ours.)

▮▮ Considering said Art. 3269 as providing an independent procedure for the condemnation of property, we may pertinently inquire: Does it make adequate provision to insure the speedy payment of compensation? If so, it is in the provision that "if injunctive relief be sought, the Court may grant such relief under the Statutes and Rules of Equity, or may, as a prerequisite for denying such relief, require defendant to give such security as the Court may deem proper for the payment of any damages that may be assessed on defendant's cross-bill for condemnation." One provision of the Bill of Rights is that "every person for an injury done him, in his lands, goods [etc.] shall have remedy by due course of law." Art. 1 sec. 13. But the Legislature in the article of the statutes in question undertakes to vest in the court the option or discretion of denying relief to which the citizen is clearly and certainly entitled and in lieu thereof and as a condition of denying such relief "require defendant to give such security as the Court may deem proper for the payment of any damages that may be assessed on defendant's cross-bill for condemnation." Again let us be reminded, this article of the statutes purports to make no distinction between the condemnation of property for the use of the State and for a public purpose of a business corporation. Does the above constitute adequate provision to insure the speedy payment of compensation? We think not. The court may consider the solvency of the corporation to be sufficient security. It may exercise its discretion in different and unpredictable ways. The law itself, in order to provide due process and effectuate the requirements of the several provisions of the Bill of Rights should prescribe what shall constitute the required security for the payment of the damages assessed, or certainty of speedy payment, and not leave it to the uncertainties of the court's discretion.

It is our conclusion that there was no error in the action of the court in overruling the motion to dissolve the temporary injunction, or in the conclusion that said Art. 3269 was not applicable to authorize a condemnation of the properties in this suit.

In our opinion the judgment should be affirmed, and it is so ordered.