### CITY OF HOUSTON v. HONORABLE ROY F. CAMPBELL, JUDGE OF THE 80TH JUDICIAL DISTRICT COURT

No. A-4854. Decided May 11, 1955.
Rehearing overruled June 8, 1955.
(279 S.W. 2d Series 308)

*Will Sears,* City Attorney, *Richard H. Burks and Robert L. Burns,* Assistant City Attorneys, for City of Houston, petitioner and relator.

*Vinson, Elkins, Weems & Searls, C. E. Bryson* and *Ben H. Rice III,* of Houston, for respondent in both cases.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

A history of the litigation presented by the two above causes is as follows:

In January of 1954, Mrs. Mary E. Adams, a feme sole, filed her suit in a district court of Harris County, Texas, in which, among other things, she alleged that the City of Houston and the Gulf Bitulithic Company were constructing a drain and storm sewer which would discharge an undue amount of water across her four-acre tract of land upon which she lived and sought an injunction to prevent such practice. Only the City answered, and in due time a hearing was had on January 22, 1954. The trial judge entered his order restraining and enjoining the defendants (City and Gulf) "from emptying water and other matter from the storm sewer now being constructed by said defendants, or one of them, onto the property of said plaintiff * * *," and fixed amount of bond to be given by Mrs. Adams. Mrs. Adams gave the bond and a temporary writ issued. No appeal was taken from this order. Gulf Bithulithic Company never has taken any part in these proceedings nor filed any pleadings.

It is stipulated that thereafter on some date between January 26, 1954 and February 5, 1954, the City filed its First Amended Original Answer and Cross-Action wherein it lodged a number of exceptions to Mrs. Adams' pleadings; a general denial; pleadings joining issue as to the amount of water which will be discharged over Mrs. Adams' land by virtue of the construction of the sewer; and a cross-action seeking recovery of a natural easement for drainage and flow of surface waters across Mrs. Adams' land; condemnation of additional drainage rights across the land and "that it be permitted to immediately enter upon such rights and take possession of such rights and easements and exercise the same, upon such terms and security as the Courts may require, Cross-Plaintiff here and now offering to furnish and/or deposit such security, * * * upon the furnishing of such security upon the terms directed by the Court," and prayer for condemnation. This was accompanied by the City's motion to dissolve the temporary injunction, filed between the same dates as the above First Amended Original Answer and Cross-Action. On February 18, 1954, the City filed its Second Amended Original Answer and Cross-Action in which it especially reserved its exceptions theretofore filed in its First Amended

Original Answer and Cross-Action; gave metes and bounds description of the land needed for the drain across Mrs. Adams' land; joined issue as to the amount of water to be carried by the easement sought, and whether water, other than from the drain's natural watershed would flow down this drain across Mrs. Adams' land; and filed its cross-action, as in the First Amended Original Answer, with enlarged and more detailed description of its claims; again the City prayed for right of immediate entry and possession of the easement or right "upon such terms and security as the Courts may require, Cross-Plaintiff here and now offering to furnish and/or deposit such security, and the temporary injunction hertofore granted by this Court be in all things dissolved and held for naught, upon the furnishing of such security upon the terms directed by the Court * * *." On March 18, 1954, Mrs. Adams filed what she designated as "Contest and Reply to Defendant's Motion to Dissolve Order Granting Temporary Injunction."

■ On March 18, 1954, a hearing was had upon this Second Amended Original Answer and Cross-Action. The court refused to fix the security to be furnished by the City or to allow the City to immediately enter upon Mrs. Adams' land, as the City claimed was authorized by Art. 3269, Revised Civil Statutes. According to the transcript the first and only order ever entered of record upon these pleadings was on March 24, 1954 and after a hearing by the court on March 18, 1954. The City filed the transcript in the Court of Civil Appeals on April 13, 1954. After filing the record, and after Mrs. Adams had made her motion to dismiss the appeal, the City filed its petition for mandamus against Mrs. Adams and Honorable Roy F. Campbell, the trial judge, seeking a writ directing the judge to enter his order fixing the amount of security to be given by the City, and permitting the immediate entry by the City upon Mrs. Adams' property. The Court of Civil Appeals combined both cases and heard them at the same time. It entered its judgment dismissing the City's appeal and refusing the writ of mandamus. 269 S.W. 2d 572. From this judgment the City applied for a writ of error as to that part dismissing its appeal, and also filed its original application for mandamus in this Court, seeking the same relief as it had sought in its application for mandamus in the Court of Civil Appeals. This mandamus practice is proper under our procedure of Houtchens v. Mercer, 119 Texas 244, 27 S.W. 2d 795, and Dallas Railway & Terminal Co. v. Watkins, 126 Texas 116, 86 S.W. 2d 1081.

We affirm the judgment of the Court of Civil Appeals in

dismissing the City's appeal. We grant the application for mandamus for the reasons hereinafter stated.

The action of both courts below is sought to be sustained by Mrs. Adams upon the ground that the refusal of the trial judge to set the amount of security to be given by the City as a condition precedent for its entry upon Mrs. Adams' land is an interlocutory order, made in the course of the trial and can only be complained of upon an appeal after the final judgment. We sustain this contention.

One of the grounds upon which the trial court refused to determine the amount of security to be deposited by the City and to dissolve the temporary injunction against the City and permit it to go upon Mrs. Adams' land and take immediate possession thereof, and which action was affirmed by the Court of Civil Appeals in the majority opinion, was that the City "having refused to waive its right *to urge its claim of title to the land in dispute,* cannot avail itself *in its alternative condemnation actions* of the statutory right of requiring the court to determine the amount of security which it should deposit as a prerequisite to taking immediate possession of the land." (Emphasis added.) These rights were claimed by the City under Art. 3269, Vernon's Annotated Texas Civil Statutes, which reads as follows:

"When the State of Texas, or any county, incorporated city, or other political subdivision, having the right of eminent domain, or any person, corporation or association of persons, having such right, is a party, as plaintiff, defendant or intervenor, to any suit in a District Court, in this State, for property or for damages to property occupied by them or it for the purposes of which they or it have the right to exercise such power of eminent domain, or when a suit is brought for an injunction to prevent them or it from going upon such property or making use thereof for such purposes, the Court in which such suit is pending may detrmine the matters in dispute between the parties, including the condemnation of the property and assessment of damages therefor, upon petition of the plaintiff, cross-bill of the defendant or plea of intervention by the intervenor asking such remedy or relief; and such petition, cross-bill or plea of intervention asking such relief *shall not be an admission of any adverse party's title to such property; and in such event the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he or it fails to establish such claim;* and provided that, if injunctive relief be sought, the Court may grant such relief under the Statutes and Rules

of Equity, or may, as a prerequisite for denying such relief, require the party seeking condemnation to give such security as the Court may deem proper for the payment of any damages that may be assessed on such party's pleading for condemnation." (Emphasis added.)

■ An examination of the legislative history of Art. 3269 will demonstrate that by the statute in its present form the Legislature intended to give to the condemnor, in cases falling within the terms of the statute, the right to urge alternative and inconsistent remedies in the same cause, and have both matters determined in one proceeding and at one time. The language above underscored by us very plainly says the condemnor does have such right. Art. 3269, as found in the Revised Civil Statutes, 1925, reads:

"When those having the right of eminent domain are sued for property or for damages to property occupied by it for the purpose for which it has the right to exercise such power, the court in which such suit is pending may determine all matters in dispute between the parties, including the condemnation of property, upon petition or cross-bill asking such remedy by defendant, *but the plea for condemnation shall be admission of the plaintiff's title to such property.*" (Emphasis added.)

This article was amended by Acts, 42nd Leg. (1931), Reg. Sess., Ch. 245, p. 413 to read as above set out except it was not applicable to a condemnor who is plaintiff or intervenor. The caption of the bill provides that it is "an Act to amend Article 3269 of the Revised Civil Statutes of 1925, providing for procedure and practice in suits against those having the right of eminent domain for property, damages to property, or injunction, and declaring an emergency."

■ The emergency clause provides in part "that the present statutes do not give the courts sufficient latitude in the application of remedies in suits growing out of the taking and occupancy of property by those entitled to take and occupy the same under the powers of eminent domain, creates an emergency and an imperative public necessity, * * *" A comparison of the two enactments will show that as originally enacted the statute was applicable only when condemning authorities were "sued for property or for damages to property"; and expressly provided that "the plea for condemnation shall be admission of the plaintiff's title to such property." The 1931 amendment made the statute applicable to injunction proceedings as well as suits for

property and damages, and in lieu of the language that the plea for condemnation would be an admission of title, substituted the following: "* * * such petition or cross-bill asking such relief shall not be an admission of the plaintiff's title to such property, and * * * the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he or it fails to establish such claim." Along with these changes the 1931 amendment also added the provision authorizing a condemnor to assert its title claim and condemn in the alternative, and a further provision authorizing the trial court to grant injunctive relief or to deny it upon deposit of proper security. When all of the changes made are noted, it becomes obvious that the purpose of the 1931 amendment was to allow a condemnor to assert its claim of title and take possession pending trial.

Art. 3269 was further amended by Acts, 49th Leg., Reg. Sess. (1945), Ch. 259, p. 404 so as to make the statute applicable to a condemnor when it is plaintiff or intervenor, as well as a defendant.

In the recent case of Magee Heirs v. Slack, 1953, 152 Texas 427, 258 S.W. 2d 797, 803 this Court said, in discussing the jurisdiction of a district court to try the issue of condemnation of property upon an original petition seeking to recover the property in controversy and in the alternative seeking condemnation of the same property:

"* * * Before the Statute was amended in 1945, it was only when the litigant having the right of eminent domain was a *defendant* that he could seek condemnation in suits like this; but under the Act of 1945 it can be invoked by the State whether it is plaintiff or defendant, or it may invoke the right even as an intervenor. Before the Act of 1931 a count for condemnation in suits like this constituted an admission of plaintiff's title, but that Act provided it should not be regarded as such an admission. Acts, 1931, 42nd Leg., p. 413, ch. 245, sec. 1. And the amendment of 1945 incorporated the same provision.

"Moreover, the caption to the amending statute of 1945, Acts 49th Leg., Reg. Sess., ch. 259, p. 404, describes the Act as 'providing for procedure and practice in suits in the District Courts of this State, involving the title *or* rights of possesion *or* to acquire properties, which any party having the power of eminent domain may seek to condemn * * *.' That language gives the statute a breadth of application sufficient to include this suit as well as to give effect to the general policy of our jurisprudence to avoid a multiplicity of suits."

■ Our holding is that the City could pursue the alternative remedies of seeking to recover title to the land, and to condemn such land in the event it was unsuccessful in its attempt to recover title. As said in the case of Brazos River Conservation and Reclamation District v. Costello, 135 Texas 307, 143 S.W. 2d 577, 578 (1), 130 A.L.R. 1220, "The history of the many laws enacted by the legislature of this State relating to the exercise of the right of eminent domain clearly shows that it is the policy of the legislature to liberalize the exercise of that power, rather than to restrict it."

■ The construction of Art. 3269 as heretofore made by this Court entitles the City to put up such security as may be determined by the trial court to protect Mrs. Adams and to give her adequate compensation for the value of her property taken. Upon the City's compliance with the terms and conditions as the trial court may prescribe as to such security for Mrs. Adams' compensation, it is entitled to take immediate possession of the property sought to be condemned.

In the case of Brazos River Conservation and Reclamation District v. Costello, supra, Costello and others obtained a temporary injunction against the District and its contractors engaged in the construction of a dam across the Brazos River, on the ground that to close the vents in such dam would result in the inundation of plaintiffs' properties and permanently deprive plaintiffs of them. The District moved to dissolve such injunction and contemporaneously filed a cross-action seeking condemnation of plaintiffs' properties under the provisions of Art. 3269. The District also offered to give such bond, or pay such sum of money into the registry of the court as the court might deem proper for the payment of all sums as might be adjudged against it upon the trial of the cause on its merits. The trial court refused to dissolve the injunction and give the City the relief sought upon the ground that Art. 3269 was not applicable to such proceedings. However, the trial court did fix the amount of $500,000 as adequate security for all the property owners in the event the District was entitled to a dissolution of the injunction. The Court of Civil Appeals affirmed the trial court's judgment refusing to dissolve the temporary injunction. This Court reversed the judgments of both courts and held:

"It being undisputed that the District is ready, able, and willing to comply with every requirement of the law, and will pay in cash into the registry of the court the various sums determined and allowed in the order of the trial court, and will meet any other requirements that the court may deem proper to pro-

tect the land owners, it logically follows that the injunction granted by the trial court should be dissolved."

■ This Court gave an unqualified refusal to the application for writ of error in the case of Brazos River Gas Co. v. Brazos River Conservation & Reclamation District, 1941, 150 S.W. 2d 350, opinion by the Eastland Court of Civil Appeals. In that case it was sought to reverse the judgment of the trial court which had refused to grant an injunction against the District inundating and thereby taking the Gas Company's properties, prior to final determination of the condemnation proceedings. We realize that an injunction had been refused in that case, and such action was affirmed, while in the case at bar an injunction was granted; however, the Court of Civil Appeals construed our holding in the Costello case, supra, as a holding that no injunction should be granted when the condemnor makes adequate provision for security of the property owners under orders of the trial court. On the exact question, the Court of Civil Appeals said:

"Applying the holding of the Supreme Court in the Costello case to the facts of the instant case, the Gas Company was not entitled to the injunction sought by it where the District filed a cross-action, under the provisions of Art. 3269, as amended, Vernon's Ann. Civ. St. art. 3269, seeking to condemn the property, and paid into the registry of the court, as security for the Gas Company, the amount found by the trial court to be sufficient for the Gas Company's protection."

By our refusal of the application for writ of error, we approved this language as a correct statement of the law. Rule 483, Texas Rules of Civil Procedure; Heinatz v. Allen, 1949, 147 Texas 512, 217 S.W. 2d 994.

■ We now come to the manner and method of affording the City the relief to which we have held it is legally entitled. Although there is a difference of opinion among the members of the Court as to whether we should sustain the City's appeal, or whether we should grant it relief by issuance of a mandamus, a majority of the Court has directed that this opinion be written so as to grant the writ of mandamus, and we so hold. "* * * A writ of mandamus will lie to correct the action of a trial judge where he acts in abuse of his discretion, or in violation of his clear duty under law, and there is no adequate remedy by appeal. Terrell v. Greene, 88 Texas 539, 31 S.W. 631; Thomason v. State, 122 Texas 160, 53 S.W. 2d 764." Stakes v. Rogers, 139

Texas, 650, 165 S.W. 2d 81, 82, (1, 2). The duty of the trial judge to fix the amount of security to be given by the City was a ministerial duty and did not involve the use of discretion on the part of the trial court. This being true the City is entitled to have issued a writ of mandamus to afford it the rights given by virtue of Art. 3269. The issues on the merits made by the pleadings of the parties are not before us in this proceeding, and this opinion shall not be construed as passing on them, except as specifically discussed herein.

■ The trial court is instructed to fix the amount of security to be deposited by the City in the registry of that court which is necessary to insure Mrs. Adams adequate compensation for her property taken and her damages suffered, together with such other requirements as may be deemed proper by the court to protect the rights of both parties to this litigation. When the City has made the deposit and has met all requiremenas of the law, and as contained in the court's order, the City shall be allowed immediately to take possession of its rights in Mrs. Adams' property, pending the final hearing of the cause on its merits. Writ of mandamus will issue as prayed for.

Opinion delivered May 11, 1955.

Rehearing overruled June 8, 1955.