COASTAL STATES GAS PRODUCING COMPANY ET AL *v.* HONORABLE JOHN H. MILLER, DISTRICT JUDGE ET AL.

No. A-7329. Decided October 21, 1959.
Rehearing Overruled December 16, 1959.
(329 S.W. 2d Series 853)

*Kelley, Looney, McLean & Littleton,* of Edinburg, and *Hart & Hart,* and *James P. Hart,* all of Austin, for relators.

*Strickland, Wilkins, Hall and Mills* and *Harry L. Hall,* all of Mission, for respondents.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

This matter comes before us in the form of a petition for writ of mandamus filed by Coastal States Gas Producing Company, a corporation, and Harrell Drilling Company, a partnership, relators, complaining of respondents, the Honorable John H. Miller sitting as Judge of the 93rd Judicial District Court of Hidalgo County, Texas, and Harold Bannworth and Arthur Bannworth, residents of Hidalgo County, Texas, requesting that the said district judge be ordered and commanded to fix and determine the security which may be proper for the payment of any damages that may be assessed on relators' pleading of condemnation in Cause No. B29054 in said 93rd Judicial District Court of Hidalgo County, Texas, and that said respondents be commanded and ordered to permit and authorize relators to deposit the sum so fixed and determined in the registry of said district court, and that upon said deposit being made the said respondents be commanded and ordered to grant relators the right to take possession of the property described in the petition in said cause in said district court, except as to tract No. 3, as to which relators have dismissed their suit. It appears that on January 30, 1959, the relators as plaintiffs in said cause filed in said court their petition for injunction and for declaratory judgment and condemnation, complaining of said respondents

Harold Bannworth and Arthur Bannworth as defendants. Said petition contained in substance three counts, as follows:

In the first count, relators allege that on March 10, 1958, the General Land Office of the State of Texas entered into an oil, gas, and mineral lease with Harrell Drilling Company, which said lease was filed for record on March 27, 1958, and is recorded in Volume 214, Page 322, of the Oil and Gas Lease Records of Hidalgo County, Texas; that subsequent thereto Harrell Drilling Company assigned and transferred a part interest in said lease to said Coastal States Gas Producing Company, which assignment is of record in Volume 217, Page 462, of the Oil and Gas Lease Records, Hidalgo County, Texas; that pursuant to Article 5421-c, of the Revised Civil Statutes of Texas, as amended, relatores filed condemnation proceedings in the County Court at Law of Hidalgo County, Texas, against Wheelock Oil Company, et al; that on the 28th day of April, 1959, the commissioners appointed by the County Judge of the County Court at Law of Hidalgo County, Texas, made an award in said proceedings, and subsequent to the entry of said award, the relators, pursuant to Article 3268, Revised Civil Statutes of Texas, posted bond as required by law and deposited with the county clerk funds equal to twice the amount of the award of the commissioners in such case, performing all acts required by law for the purpose of immediately entering upon the property described in said condemnation proceedings, which was necessary for drilling sites and roadways in connection with said oil and gas lease. Relators further allege that the respondents, Harold Bannworth and Arthur Bannworth, who were not parties in the condemnation proceedings referred to, are asserting some interest in said land and that they have interfered with relators' possession of said land and are preventing relators from exercising their rights of possession under said condemnation proceedings; that relators have a lawful right to enter upon said property, but that respondents have prevented their doing so, to relators' irreparable damage.

In the second count of said petition, relators, in the alternative, pray for relief under Article 2524-1, Revised Civil Statutes, commonly known as the Uniform Declaratory Judgment Act, relators alleging that respondents are asserting a right in the property, that there is a current existing controversy between relators and respondents regarding the title and possession of said property, but that the court should adjudge what rights, title, or interest said respondents have in and to said property, and should adjudge that the respondents have no right to inter-

fere with or prevent the relators from performing the acts authorized under the terms of said condemnation proceedings.

In the third count of said petition, pleading further in the alternative, relators pray that if injunctive relief is denied under Counts 1 and 2, that relators seek to condemn the interest of said respondents in said land; that said land is necessary for drilling sites and roadways; that relators have the right of eminent domain and the right to condemn property for roadways and drilling sites; that relators have determined that the acquisition of such roadways and drilling sites is necessary to the operation of their lease; that relators do not know and cannot determine with certainty what interest, if any, said respondents have in and to said property; that relators offer to post such bond and security as the court in its discretion deems necessary or proper, and relators specifically request the court to set the amount of bond as security and that the relators be permitted to proceed with the construction and operation of the roadways and drilling sites and that defendants be enjoined from interfering therewith. Relators specifically request that the court set the security as required by Article 3269, Revised Civil Statutes of Texas, as amended, and relators offer to do equity and post such bond as is required by the court and to perform such other acts as the court may deem reasonably necessary in the premises by way of protecting the said respondents against damages.

In their prayer relators pray for the following temporary relief:

(1) A temporary injunction enjoining said respondents from interfering with plaintiff's construction and use of the roadways and the operations of the drill sites for the purposes set forth in Article 5421-c, Revised Civil Statutes of Texas;

(2) That the court set the amount of security to be required of relators and that upon posting such security, defendants be temporarily enjoined from interfering with plaintiffs' use of said roadways and drill sites, as provided in said Article 5421-c;

(3) In the alternative, that this court fix the security as required by Article 3269, Revised Civil Statutes of Texas, and upon relators posting such security, relators be authorized to take immediate possession of such property for the purpose of roadways and drill sites.

Relators further prayed in said petition that upon final hearing the court render judgment for relators for title and possession of said property and that in the alternative the court declare and adjudge what right and interest respondents have in said property, and that respondents be permanently enjoined from interfering with plaintiffs' use of said property for the purposes authorized, and in the further alternative that relators be permitted to condemn said property under the power of eminent domain. Respondents Harold Bannworth and Arthur Bannworth in their answer filed in said cause No. B20594, on May 1, 1959, allege in substance the following defenses:

(1) That Article 3269, Vernon's Civil Statutes, does not authorize the court to permit relators to give security for the payment of damages as may be assessed upon their pleading for condemnation or permit relators to go into possession of the property sought to be condemned, because said respondents have not sought any injunctive relief against relators.

(2) That Tract No. 3 described in the third count in the plaintiffs' petition should not be included in any injunctive relief, because the condemnation proceedings as to said Tract No. 3 had been dismissed. (This issue was met by plaintiffs by dismissing as to said Tract No. 3, and this issue is no longer in the case.)

(3) That respondents are in possession of the property in question under a lease for agricultural purposes for fifteen years and are entitled to remain in possession of said premises; and

(4) That relators had not entered into possession of the property and had not made a previous attempt to condemn the interests of said respondents in said land.

A hearing was held on relators' petition and said answer of respondents on May 1, 1959, and the court on said date rendered and entered its judgment denying all temporary relief prayed for by plaintiffs and further providing as follows:

"The Court further finds, in compliance with the request of plaintiffs, that the plaintiffs have offered to post bond or deposit cash security in such amount as the Court might deem proper and sufficient in order to afford them the right claimed to enter immediately upon the property described in the petition, but the Court, being of the opinion that such right does not exist in said plaintiffs, finds and so holds that the plaintiffs should not be

permitted to post bond or other security in order to obtain the right of immediate entry upon such property."

It can be seen from the issues drawn by said pleadings that the decision in this case rests upon a construction and interpretation of Article 3269, Vernon's Texas Civil Statutes, as amended in 1945. Relators contend that since they are plaintiffs in a suit for property rights and the suit is brought for injunction to prevent respondents from interfering with their possession and use of such property by relators for the purposes for which they are given the right of condemnation and eminent domain, that it was and is the ministerial duty of the judge presiding in said cause to require and permit relators to give such security as the court may deem proper for the payment of any damages that might be assessed on relators' pleading for condemnation in said suit, he having theretofore denied such injunctive relief. Respondents contend that since the relators do not occupy the lands in question and respondents were not asking for injunctive relief, that this case is not one coming under the terms of said Article 3269. The court so construed said article and denied all relief for which relators prayed. We think under the plain provisions of the article that the suit filed in the 93rd Judicial District Court of Hidalgo County, No. B20954, is a suit coming within the terms of said Article 3269, which we quote:

"When the State of Texas, or any county, incorporated city, or other political subdivision, having the right of eminent domain, or any person, corporation or association of persons, having such right, is a party, as plaintiff, defendant or intervenor, to any suit in a District Court, in this State, for property or for damages to property occupied by them or it for the purposes of which they or it have the right to exercise such power of eminent domain, or when a suit is brought for an injunction to prevent them or it from going upon such property or making use thereof for such purposes, the Court in which such suit is pending may determine the matters in dispute between the parties, including the condemnation of the property and assessment of damages therefor, upon petition of the plaintiff, cross-bill of the defendant or plea of intervention by the intervenor asking such remedy or relief; and such petition, cross-bill *of* plea of intervention asking such relief shall not be an admission of any adverse party's title to such property; and in such event the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he or it fails to establish such claim; and provided that, if injunctive relief be sought, the Court may grant such relief under the Statutes and

Rules of Equity, or may, as a prerequisite for denying such relief, require the party seeking condemnation to give such security as the Court may deem proper for the payment of any damages that may be assessed on such party's pleading for condemnation. Acts 1899, p. 18; Acts 1931, 42nd Leg., p. 413, ch. 245, Sec. 1; Acts 1945, 49th Leg., p. 404, ch. 259, Sec. 1."

It can be seen that the article covers three classes of suits. One class is for property, another is for damages to property occupied by one having the right of eminent domain, and the third class is one brought for an injunction to prevent one claiming the right of eminent domain from going upon the property or making use thereof. We can eliminate the last two classes of suits because the relators, plaintiffs in the court below, were not occupying the property, nor were they suing for damages, and neither was an injunction brought against them to prevent them from using the property for the purposes for which they were exercising their right of eminent domain. However, it was a suit involving an interest in property. The relators had gone into the county court, filed condemnation proceedings against all of the record owners of the lands involved, and an award having been made, relators posted bond as required and deposited the required amount of money with the county clerk, complying in all respects with the requirements which gave them the right to enter immediately upon the lands involved, in so far as the record owners and parties to the suit were concerned. A suit involving the right in and to the property acquired by said condemnation proceeding is such a property right as comes within the first class of cases mentioned above.

Respondents contend that the relators would have to be occupying the property in question in order to be entitled to come under this statute. The requirement of occupancy applies only to cases where the suit involves damages to property which is occupied by one claiming the right of condemnation. This very situation was before this court in the case of Magee Heirs v. Slack, 152 Texas 427, 258 S.W. 2d 797, wherein the plaintiff, the condemnor, did not occupy the property involved in the suit, and this court held that it was such a case as came within the terms of this statute.

Another contention is that even if this is such a suit as comes within the terms of the statute, yet the trial court did not have authority to set the amount of bond or determine the amount of cash security that the relators should deposit in order to afford them the right to enter immediately upon the property in ques-

tion. They say that the injunctive relief sought by relators and denied was not such injunctive relief as is contemplated by the statute, it being respondents' contention that the injunctive relief referred to in the latter part of the statute refers only to an injunction that may have been brought by the condemnee. Certainly the statute does not specifically so confine it, nor do we see any reason to place such a construction on this statute.

**1** The proviso mentioned in the statute is simply: "If injunctive relief be sought," without any limitation as to which party may be seeking such relief. In our opinion the injunctive relief spoken of is injunctive relief sought by any party to the suit and not just that sought by the condemnee. The statute which allows district courts under certain circumstances to try condemnation matters has been in existence since 1899. Such statute has been amended twice, the first time in 1931 and again in 1945. On each occasion the statute has been broadened and extended. It has been construed in the following cases: Brazos River Conservation and Reclamation District v. Costello (1940), 135 Texas 307, 143 S.W. 2d 577 (1), 130 A.L.R. 1220; Brazos River Gas Company v. Brazos River Conservation and Reclamation District (1941), 150 S.W. 2d 350, writ of error refused; Magee Heirs v. Slack (1953), 152 Texas 427, 258 S.W. 2d 797; City of Houston v. Adams (1955), 154 Texas 448, 279 S.W. 2d 308. We think it unnecessary to discuss these opinions. They are all harmonious and lead to but one conclusion, and that is that Article 3269, Vernon's Texas Civil Statutes, as amended in 1931 and again in 1945, was intended by the Legislature to give the condemnor adequate remedy in condemnation proceedings brought in the district court. Suffice it to say that this court in the Adams case, supra, in discussing the effect of the 1931 amendment which provides that the condemnor as a defendant could by cross action ask for condemnation of the property involved without admitting the title of the condemnee, said: "When all of the changes made are noted, it becomes obvious that the purpose of the 1931 amendment was to allow a condemnor to assert its claim of title and take possession pending trial." (279 S.W. 2d at p. 313).

**2** It follows that we can now say when all the changes made are noted it becomes obvious that the purpose of the 1945 amendment was to allow a condemnor, whether defendant, *plaintiff* or *intervenor*, to assert its claim of title and take possession pending trial. To follow the argument of respondents would lead us to strange results. They say that a plaintiff or intervenor in a suit coming within this article cannot have the right of im-

mediate entry pending trial unless the condemnee asked for injunctive relief. This court's opinion in the Costello case, supra, has been construed by the Court of Civil Appeals at Eastland in the Brazos Gas Company case, supra, and by this court in the Adams case, supra, as holding in effect that a condemnee has no right to an injunction where the condemnor is ready, able and willing to make adequate provision for security of the property owner under orders of the trial court. Yet the respondents would have us hold that the condemnee, while not being entitled to injunctive relief, could accomplish the same result of preventing immediate entry of condemnor by resorting to self help by force or threat of violence, even though the condemnor was ready, able and willing to provide adequate security for the property involved. We cannot belief that the Legislature intended to say in said statute that the district court having jurisdiction of such case would be without the authority and duty to fix the amount of security necessary to protect the condemnees in their property, thereby making it possible for the condemnor to comply therewith and make immediate entry on the land. No strange or unreasonable results could occur by our holding that the district court had such authority and duty. When the trial court in this instance was confronted with the condemnor's request for injunctive relief, it had only two alternatives, that is, to grant or to deny the injunction. Had the court granted the injunction, the condemnor would have needed no other relief. However, the court having concluded that the injunction should be denied, it became the duty of the court to fix the amount of security necessary to protect the condemnees in their property rights, so that upon compliance with such order of the court the condemnor could make immediate entry upon the land for the purposes for which it had the right of condemnation.

3 One of respondents' points raised in their brief is that the trial court did not have jurisdiction because this suit in trespass to try title was not filed in good faith, but was filed merely for the purpose of conferring jurisdiction on the district court in a condemnation proceeding. This matter was not raised in the trial court by plea in abatement or other pleadings. The trial court's judgment does not reflect that he passed on any facts determining good faith. From the pleadings, the statement of facts and the trial court's judgment it is apparent that all parties assumed that the suit was brought in good faith, and we assume as much here.

Our jurisdiction to hear this mandamus proceeding has been questioned by the respondents because the relators had the

remedy of appeal to the Court of Civil Appeals from the decision of the district court denying the temporary injunction. The question before this court, however, is not the propriety of the denial of the injunction requested by relators. The issue here is whether the trial judge, after he had denied the temporary injunction, had the authority to refuse to set the bond or security which would allow the relators to enter upon the land. This refusal to set the bond is an interlocutory order and not appealable, and since it involves a purely ministerial duty, the remedy of mandamus filed directly in this court is available. City of Houston v. Adams, 154 Texas 448, 279 S.W. 2d 308. We recognize that it is the policy of this court as announced in Houtchens v. Mercer, 119 Texas 431, 29 S.W. 2d 1031, that where the Court of Civil Appeals has jurisdiction to grant a writ of mandamus the Supreme Court will not grant such writ unless application is first made to the Court of Civil Appeals and rejected by that court. However, the Court of Civil Appeals does not have jurisdiction to grant the relief relators seek in this proceeding. The court order which relators seek is not a writ necessary to enforce the jurisdiction of the Court of Civil Appeals under Article 1823, R.C.S., nor is it a writ to compel the district judge to proceed to trial and judgment under Article 1824, R.C.S.

We presume that the trial court will follow the opinion of this court without the necessity of a writ of mandamus, but in the event it should fail to do so, the clerk of this court is ordered to issue writ of mandamus in accordance with this opinion.

Opinion delivered October 21, 1959.

MR. JUSTICE CALVERT joined by JUSTICES WALKER and GREENHILL, dissenting.

I cannot agree that relators are entitled to the writ of mandamus they seek.

I agree with the conclusion of the majority that as now written Article 3269 applies to three classes of suits, to-wit: (1) suits for property; (2) suits to recover damages to property occupied by one having a right of eminent domain, and (3) suits brought for an injunction to prevent one claiming the right of eminent domain from going upon property or making use thereof. I agree also with the conclusion of the majority that this is a class (1) suit and not a class (2) or class (3) suit. I further agree that relator's suit was not attacked on the ground

that it was filed in bad faith. My agreement with the majority ends at that point.

The important question in the case is this: Does the proviso at the end of Article 3269 require a district court, upon denying injunctive relief to one out of possession of property but having the right of eminent domain and wishing to obtain immediate possession, to fix security for the payment of damages? Article 3269 clearly requires the fixing of security only as a prerequisite to denying injunctive relief. We have held that in a case to which the statute is applicable the fixing of security is mandatory rather than discretionary as the literal wording of the statute seems to imply. City of Houston v. Adams, 154 Texas 448, 279 S.W. 2d 308. The majority now interpret the statute to mean that the fixing of security is mandatory when injunctive relief is denied to any party to a suit who may seek it in any of the three classes of suits. In my opinion that interpretation distorts the meaning of the statute and will lead to unreasonable results. It is my opinion that the duty to fix security exists only when injunctive relief is sought by and denied to an owner-condemnee, and that it exists, therefore, only when an owner-condemnee, by suit or by cross-action, seeks by injunction to prevent a condemnor, out of possession, from going into possession, or to prevent a condemnor who has gone into possession from using the property. It seems to me that that interpretation of the statute is impelled both by its wording and its history.

I have said that the majority's interpretation will lead to strange and unreasonable results. Under the majority's interpretation if one having the power of eminent domain has a title dispute with the owner-condemnee and is out of possession but wishes immediate possession without obtaining it by force, he must think up some basis for asking for injunctive relief and then induce the court to deny the relief he has asked else he will have no right to put up the statutory security and go into immediate possession. The statute would then be bereft of all logic and reason. That would be so because the statute requires that security be given as a *prerequisite* to a *denial* of injunctive relief and that it be given *by the condemnor*. The only type of injunctive relief which could be asked by a condemnor would be such as would prevent the condemnee from obstructing or interfering with the condemnor's right to go into possession, as in this case, or, being in possession, to continue using the property. To get into possession or to continue using the property against an interfering condemnee, a condemnor needs injunctive relief and it is only when that relief is *granted,* not *denied,* that a con-

demnee needs the protection of security. And if granted, the condemnee would be protected by the injunction bond. It would be foolish to say that the Legislature intended that a trial judge, in either of those fact situations, should have to say to the condemnor: "In order to get possession of or to use the property you need an injunction to remove obstructions. If I should grant it the condemnee would then need security to protect him, but I could not require you to give the statutory security because the statute permits me to require you to give it only if I deny you injunctive relief. I will therefore deny you the injunctive relief you seek, which means that the condemnee may continue to obstruct your possession or use of the property and will not need security, but before I deny it I must require you to give security. Having given it, you then get all the relief you would have gotten if I had granted it." I cannot believe the Legislature ever intended the playing of any such legal tiddle-dy-winks.

Neither of the cases cited by the majority and by relators supports their interpretation of the statute or the judgment granting the writ of mandamus. In Magee Heirs v. Slack, 152 Texas 427, 258 S.W. 2d 797, the only pertinent question decided was that Article 3269 gave to one having the power of eminent domain an alternative right of condemnation in a suit for title in the district court, regardless of whether he appeared in the suit for title as plaintiff, defendant or intervenor, and even though he was not in possession. The question of the right of one out of possession but having the right of eminent domain to have the court fix security was not in the case. In City of Houston v. Adams, 154 Texas 448, 279 S.W. 2d 308, suit was by Adams to enjoin the City from continuing the flooding of plaintiff's property. By way of answer the City asserted title to the property and alternatively sought its condemnation. A temporary injunction was granted to Adams. Thereafter, the district court refused to dissolve the injunction and refused to fix security as a condition to dissolving it. The effect of our holding was that it was the mandatory duty of the district court to fix security and upon the giving of the security to dissolve the injunction. It will be noted that the injunction was not sought by the City but was sought by the owner-condemnee. Our holding in the Adams case is brought into sharper focus by our citation and discussion in the opinion of Brazos River Gas Co. v. Brazos River C. & R. Dist., Texas Civ. App., 150 S.W. 2d 350, writ refused. We construed and reapproved the holding in that case as a holding that no right to injunctive relief exists in an owner-condemnee when a condemnor, out of but wishing to obtain possession, tenders the security the court fixes as a

condition precedent to immediate entry. To the same effect is Brazos River C. & R. Dist. v. Costello, 135 Texas 307, 143 S.W. 2d 577. In these cases the injunctive relief was sought by the owner-condemnee and no case, so far as I am aware, is authority for what the majority have held in this case.

When the statute is examined as an entirety it seems clear to me that in saying "if injunctive relief is sought" the court may grant it, or may, as a prerequisite to denying it, fix security "for the payment of any damages that may be assessed," the Legislature was referring to injunctive relief sought by the owner-condemnee. If he sought injunctive relief and the court granted it and the condemnor was thus excluded from the property or from using it, he would need no security. But if it was denied and the condemnor went into possession and began to use it, or being in possession was permitted to continue to use it, the owner-condemnee would need security to protect him if it should later be determined that he was in fact the owner. The fact that we held in City of Houston v. Adams, supra, that the denial of injunctive relief to the owner-condemnee was mandatory rather than discretionary does not militate against that reasoning. Moreover, to permit a condemnor to post security and go into possession of property over the protest of an owner-condemnee would be, in effect, to *grant* an injunction if one were sought by the condemnor. Furthermore, the only class of suit described in the first part of the statute to which the proviso words "if injunctive relief be sought" can be expressly tied is the third class: "when a suit is brought for an injunction to prevent them or it [one having a right of eminent domain] from going upon such property or making use thereof for such purposes."

I need not review the history of Article 3269 in detail. It is enough to review it in a general way. That history supports the interpretation of the statute here espoused. Prior to the enactment of the forerunner to Article 3269 in 1889, the exclusive method of exercising the power of eminent domain was by special proceedings to condemn by the one having the power. The International & G.N. Ry. Co. v. Benitos, 59 Texas 326; Gulf, C. & S.F. Ry. Co. v. Poindexter, 70 Texas 98, 7 S.W. 316, 323; Galveston Wharf Co. v. Gulf, C. & S.F. Ry. Co., 72 Texas 454, 10 S.W. 537. The Act of 1889 (Acts Regular Session 21st Leg., p. 18) applied only to railroads, Pecos & N.T. Ry. Co. v. Malone, Texas Com. App., 222 S.W. 217, and permitted condemnation in a district court by a railroad only when it was sued for property occupied by it or for damages thereto. By the

express terms of the Act condemnation was to be by cross-bill and a plea for condemnation operated as an admission of the plaintiff's title. It was carried into the Revised Civil Statutes of 1911 as Art. 4472 and the 1914 statutes as Art. 6531 in that form. By the time it was carried into the Revised Civil Statutes of 1925 it was broadened to apply to all having the power of eminent domain but its provisions otherwise remained the same. By an Act of the Regular Session of the 42nd Leg., ch. 245, p. 413, the statute was again amended. As amended, however, the right to condemn in the district court continued to exist only when the one having the power was defendant and by way of cross-bill. It was in this Act that the three classes of suits were first set up, that is, suits for property, for damages to property, or for injunction to prevent the condemnor from going on property or making use thereof. It is of special significance also that it was in this Act that the proviso now appearing in Article 3269 was added and that it was added in almost the exact language in which it appears in that Article today. In other words, the provision for the giving of security as a condition to denial of injunctive relief, as originally enacted, could only have applied to a situation in which injunctive relief was denied to an owner-condemnee because the statute contained no provision for one having the power of eminent domain to initiate a suit as plaintiff and seek injunctive relief. The 1931 Act also added the new provision that a plea for condemnation by cross-bill did not constitute an admission of title in the opposite party. The Article was amended again and put into its present form in 1945 by Act of the 49th Leg., ch. 259, p. 404. Under that amendment the right to condemn in the district court was extended to the party having the power of eminent domain whether that party appeared in the case as plaintiff, defendant or intervenor, but there is no language in the body of the Act, its caption or emergency clause indicating an intention of the Legislature that the right to give security was extended to fact situations in which the condemnor might seek some type of injunctive relief and have it denied.

In this case relators instituted condemnation proceedings against some owning interests in the property sought to be condemned. Proceedings were not instituted against respondents. When relators sought to go into possession of the property, respondents used self-help to keep them out. That presents a fact situation which the Legislature did not envision when Article 3269 was last amended. Relators had two courses open to them. Gregg v. Lower Nueces River Water S. Dist., Texas Civ. App., 303 S.W. 2d 812, writ refused. They could admit respondent's

title and institute regular condemnation proceedings against them. Art. 3264; Houston N.S. Ry. Co. v. Tyrrell, 128 Texas 248, 98 S.W. 2d 786, 793. By taking that course and depositing the amount of any award made by special commissioners, subject to respondents' right of withdrawal, with additional security, they could have secured possession in a very brief time. Art. 3268; Thomas v. Housing Authority of City of Dallas, 153 Texas 137, 264 S.W. 2d 93. The other course open to them was to sue for title in the district court, but if they took that course the statute gave them no right to acquire immediate possession unless respondents sought injunctive relief. They took the latter course and we should not now judicially extend the provisions of the statute in order to relieve them of the necessary effect of having made a bad choice. In doing so we give relators all of the advantages they might have had through regular condemnation proceedings and relieve them of all of the burdens.

What relators really need and want as the only effective remedy for the plight in which they find themselves is a mandatory injunction to require respondents to remove the barriers which, by self-help, they have erected to prevent an entry on the property. They prayed for that type of relief by asking for a temporary injunction in the trial court but it was denied. If an injunction was erroneously denied their remedy was by an appeal to the Court of Civil Appeals for a revision of the judgment. What we are really asked to do in this mandamus proceeeding is to direct the trial court to fix the statutory security and then to reverse the trial court's judgment denying injunctive relief and render judgment granting it when relators have not appealed from the trial court's judgment. This we are not justified in doing except by rewriting Article 3269.

Opinion delivered October 21, 1959.

Rehearing overruled December 16, 1959.