**Opinion filed February 3, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00010-CV
_____

## IN RE LONE STAR NGL PIPELINE LP
## AND ETP CRUDE LLC

**Original Mandamus Proceeding**

### O P I N I O N

Relators, Lone Star NGL Pipeline LP and ETP Crude LLC, filed this original petition for writ of mandamus in which they request that we instruct the Honorable John Smith, District Judge of the 161st District Court of Ector County, to vacate an order entered on December 18, 2019, in Cause No. B-19-09-1223-CV. In that order, Judge Smith denied Relators' motion to abate injunction proceedings and to set security.

We conditionally grant the petition for writ of mandamus as to the portion of Judge Smith's order in which he denied Relators' motion to set security. We deny the petition for writ of mandamus as to the portion of Judge Smith's order in which he denied Relators' motion to abate injunction proceedings.

*Background*

On September 27, 2011, Loretta Williams Shumway granted Lone Star an easement on certain real property to construct a pipeline for the transportation of natural gas and natural gas liquids only. Payments for the easement were made to Shumway and to Mary W. Watt, Individually and as Trustee for the Mary Williams Watt Grandchildren's Trust.

The pipeline that was constructed on the easement is part of a pipeline that extends for fifty miles. Relators have the same corporate parent, and Lone Star conveyed the entire pipeline to ETP. ETP intended to use the pipeline to transfer crude oil, rather than natural gas and natural gas liquids.

ETP hired Chase Brawley, a landman, to obtain any necessary amendments to the easements for the pipeline. In late 2017 or January 2018, Brawley contacted Watt and requested that the easement at issue in this case be amended to allow for the transportation of crude oil. Watt requested payment of $500,000 plus shares of stock in ETP's parent company worth $500,000 for the amendment. Brawley declined Watt's offer and did not make a counteroffer.

On January 23, 2018, ETP began transferring 40,000 barrels of crude oil per day through the pipeline. In June 2019, Real Parties in Interest Richard Watt, as Independent Executor of the Estate of Mary Williams Watt, Deceased; Ashley Williams Watt, as Trustee of the Williams Grandchildren's Trust; and Shumway discovered that the pipeline was being used to transfer crude oil. Real Parties in Interest sued Lone Star for breach of contract and Lone Star and ETP for trespass, fraudulent inducement, common law and statutory fraud, conspiracy, unjust enrichment, and quantum meruit. Real Parties in Interest also requested that the trial court declare that the easement was terminated and enjoin Relators from transporting crude oil or any product other than natural gas or natural gas liquids through the pipeline.

Pursuant to Chapter 21 of the Texas Property Code, ETP filed a counterclaim to condemn the right to transport crude oil through the pipeline. ETP alleged that it had not asserted "an ordinary or conventional, statutory condemnation proceeding" and that it was not subject to the "standard procedure of Sections 21.012 through 21.016 of the Texas Property Code, as ordinarily required by Section 21.011." ETP invoked Sections 21.003, 21.017, and 21.064(b) of the Property Code and requested that Judge Smith fix an amount of security adequate to compensate Real Parties in Interest for damages that might result from the condemnation. ETP provided an appraisal that calculated that Real Parties in Interest's damages were $1,111.

Relators also filed an amended motion to abate the injunction proceedings and set security for the condemnation counterclaim. At the hearing on the motion, Relators agreed to post security of one million dollars if required to do so by Judge Smith. Real Parties in Interest responded that the trial court did not have jurisdiction to set security until Relators followed the standard condemnation procedures and obtained an award from a panel of special commissioners.

Judge Smith denied Relators' motion to set security and to abate the injunctive proceedings. Judge Smith also orally ruled that Real Parties in Interest's request for a temporary injunction to stop the transfer of crude oil through the pipeline was granted, but stayed the grant of injunctive relief for a period of forty-five days. The record does not reflect that Judge Smith has signed an order that grants Real Parties in Interest's request for a temporary injunction.

*Analysis*

Mandamus is an extraordinary remedy and is warranted only when the trial court clearly abused its discretion and the relator has no other adequate remedy. *In re Murrin Bros. 1885, Ltd.*, No. 18-0737, 2019 WL 6971663, at *2 (Tex. Dec. 20, 2019) (orig. proceeding). The relator has the burden to prove both of these

requirements. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam).

A trial court abuses its discretion when its ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). "Similarly, a trial court abuses its discretion when it fails to analyze or apply the law correctly." *Id.*; *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding) ("[A] trial court has no 'discretion' in determining what the law is or applying the law to the facts." (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding))).

We have reviewed the petition for writ of mandamus and the mandamus record as it pertains to that portion of Judge Smith's December 18, 2019 order in which he denied Relators' request to abate the injunction proceedings, and we hold that, as to that ruling, Relators have failed to show that they are entitled to the requested relief. Therefore, we deny Relators' petition for writ of mandamus to the extent that they request that we order Judge Smith "to refuse to issue any injunction to cease use of the pipeline in place and subject to the condemnation proceeding initiated by cross-claim in this matter." *See* TEX. R. APP. P. 52.8(a).

We next consider whether Judge Smith abused his discretion when he denied Relators' motion to set security. Relators assert that, pursuant to "a special procedure for the condemnation of property in district court" set out in Sections 21.003 and 21.017 of the Property Code, they have a right to bring a counterclaim for condemnation. Relators argue that this procedure is intended to:

> "[E]xpedite" the determination of all matters in the claim, and upon demand, a district court is required to determine adequate security as a ministerial duty, without the condemnor having to first satisfy the regular procedure of demonstrating good faith negotiation, special commissioner's hearings, initial offers, and so on.

4

Real Parties in Interest respond that the "alternative procedure" to condemn the property that Relators rely upon was repealed in 1983 when the legislature enacted Chapter 21 of the Property Code and that Relators are not entitled to post security and possess the property until they comply with the statutory requirements to condemn and possess the property set out in Sections 21.012 through 21.016 of the Property Code.

We review matters of statutory construction de novo. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, No. 18-0656, 2019 WL 6971659, at *3 (Tex. Dec. 20, 2019). Our primary goal is to give effect to the legislature's intent. *Gunn v. McCoy*, 554 S.W.3d 645, 672 (Tex. 2018). The best guide to that determination is usually the plain language of the statute. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex.), *petition for cert. filed*, (U.S. Nov. 7, 2019) (No. 19-603). We must enforce the statute "as written" and "refrain from rewriting text that lawmakers chose." *Creative Oil & Gas*, 2019 WL 6971659, at *4 (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)). We are required to give consideration to the language in the specific statutory section at issue, as well as to the statute as a whole, *id.*, and must not interpret the statute in a manner that renders any part of it meaningless or superfluous, *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

A district court and a county court at law have concurrent jurisdiction in an eminent domain case. TEX. PROP. CODE ANN. § 21.001 (West 2014). A district court also has jurisdiction to:

> [D]etermine all issues, including the authority to condemn property and the assessment of damages, in any suit:
>
> > (1) in which this state, a political subdivision of this state, a person, an association of persons, or a corporation is a party; and

(2) that involves a claim for property or for damages to property occupied by the party under the party's eminent domain authority or for an injunction to prevent the party from entering or using the property under the party's eminent domain authority.

*Id.* § 21.003.

Section 21.011 of the Property Code is titled "Standard Procedure" and states that the "[e]xercise of the eminent domain authority in all cases is governed by Sections 21.012 through 21.016" of the Property Code. *Id.* § 21.011. The Standard Procedure generally requires that a condemnor disclose certain information and make a bona fide offer to the property owner. *Id.* §§ 21.0111–.0113. If the condemnor and the property owner are unable to agree, the condemnor may begin a condemnation proceeding by filing a petition that contains specific information in the proper court. *Id.* § 21.012(a)–(b). The judge of the court must appoint three special commissioners to hold a hearing and assess the damages of the property owner. *Id.* §§ 21.014–.015, .041–.042, .048. If a party timely objects to the findings of the special commissioners, the court is required to try the case in the same manner as other civil cases. *Id.* § 21.018. If no party files timely objections to the findings of the special commissioners, the judge of the court is required to adopt the commissioners' findings as the judgment of the court. *Id.* § 21.061.

The Standard Procedure is a two-part process that begins with an administrative proceeding followed, if necessary, by a judicial one. *Hubenak v. San Jancinto Gas Transmission Co.*, 141 S.W.3d 172, 179 (Tex. 2004); *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex. 1984). Upon the filing of objections to the commissioners' award, the case converts into a "normal pending cause in the court with the condemnor as plaintiff and the condemnee as defendant." *Amason*, 682 S.W.2d at 242; *see also* PROP. § 21.018(b); *Hubenak*, 141 S.W.3d at 179. A court does not have "judicial jurisdiction" over a condemnation claim until

an objection to the commissioners' award is filed. *Seals v. Upper Trinity Reg'l Water Dist.*, 145 S.W.3d 291, 296 (Tex. App.—Fort Worth 2004, pet. dism'd).

Section 21.017 of the Property Code, which is titled "Alternative Pleadings," immediately follows the Standard Procedure in the statute and provides that the state, a political subdivision of the state, a person, an association of persons, or a corporation that is a party to a suit covered by Section 21.003 may "by petition, cross-bill, or plea of intervention" "assert a claim to the property or, alternatively, seek to condemn the property." PROP. § 21.017(a). A district court that is hearing a suit that is covered by Section 21.003 may grant injunctive relief or, alternatively, "require a condemnor to provide security adequate to compensate the property owner for damages that might result from the condemnation." *Id.* § 21.064.

Relators assert that they have a right to file a counterclaim for condemnation pursuant to Sections 21.003 and 21.017 and to take possession of the pipeline after they post adequate security. Real Parties in Interest respond that Relators rely on cases that interpreted Section 21.003 and 21.017's predecessor statute, that those cases are no longer authoritative after the legislature enacted the Property Code, and that Relators were required to follow the Standard Procedure before they filed a counterclaim for condemnation.

We agree with Real Parties in Interest that there is little authority that addresses whether Chapter 21 requires a condemnor to follow the Standard Procedure before it can file an Alternative Pleading under Section 21.017.[1]

---

[1]The available authority suggests, without any substantive discussion, that a condemnor is not required to follow the Standard Procedure before filing a counterclaim for condemnation under Section 21.017. *See Roberson v. City of Austin*, 157 S.W.3d 130, 134–35 (Tex. App.—Austin 2005, pet. denied) (noting that, following a jury trial, the trial court awarded the condemnor title to a sanitary sewer system based on its counterclaim for condemnation); *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 386 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting that the condemnor filed a counterclaim under section 21.017 on the day of trial of the condemnee's claims and that trial proceeded on all claims); *Harris Cty. Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 574 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (noting that condemnor filed a trial amendment pursuant to Section 21.017 to condemn the property).

7

However, Chapter 21 was not enacted in a vacuum; rather, it was enacted effective January 1, 1984, as part of a "nonsubstantive revision of the statutes relating to property." *See* Act of May 26, 1983, 68th Leg. R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3497–3508. Indeed, the legislature specifically stated that the Property Code, including Chapter 21, was "intended as a recodification only, and no substantive change in the law is intended by this Act." *Id.* at 3730, § 7.

When the legislature recodifies an existing statute without substantive change, we presume that it did so "with full knowledge of the existing condition of the law and with reference to it." *JCB, Inc. v. Horsburgh & Scott Co.*, No. 18-1099, 2019 WL 2406971, at *4 (Tex. June 7, 2019) (quoting *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677 (Tex. 2007) (orig. proceeding)). Therefore, we may consider the law prior to the codification of Chapter 21 in our analysis of the procedure that a condemnor is required to follow when it files a counterclaim for condemnation.[2]

Sections 21.003, 21.017, and 21.064 were derived from Article 3269 of the Texas Revised Civil Statutes. *See* 1983 Tex. Gen. Laws at 3498, 3501, 3508. Article 3269 provided:

> When the State of Texas, or any county, incorporated city, or other political subdivision, having the right of eminent domain, or any person, corporation or association of persons, having such right, is a party, as plaintiff, defendant or intervenor, to any suit in a District Court, in this State, for property or for damages to property occupied by them or it for the purposes of which they or it have the right to exercise such power of eminent domain, or when a suit is brought for an injunction to prevent them or it from going upon such property or making use thereof for such purposes, the Court in which such suit is pending may determine the matters in dispute between the parties, including the condemnation of the property and assessment of damages

---

[2]Following the enactment of Chapter 21, the supreme court has relied on cases that interpreted Chapter 21's predecessor statute with no indication that the recodification in 1984 made any substantive change to the law. *See In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 542–43 nn. 39, 31, 36 (Tex. 2016); *FKM P'ship, Ltd. v. Bd of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 626–28 (Tex. 2008); *City of Tyler v. Beck*, 196 S.W.3d 784, 785–86 (Tex. 2006) (per curiam).

8

therefor, upon petition of the plaintiff, cross-bill of the defendant or plea of intervention by the intervenor asking such remedy or relief; and such petition, cross-bill or plea of intervention asking such relief shall not be an admission of any adverse party's title to such property; and in such event the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he or it fails to establish such claim; and provided that, if injunctive relief be sought, the Court may grant such relief under the Statutes and Rules of Equity, or may, as a prerequisite for denying such relief, require the party seeking condemnation to give such security as the Court may deem proper for the payment of any damages that may be assessed on such party's pleading for condemnation.

*City of Houston v. Adams*, 279 S.W.2d 308, 311–12 (Tex. 1955) (orig. proceeding). As does Section 21.003, Article 3269 covered suits (1) for property, (2) for damages to property occupied by one having the right of eminent domain, and (3) for an injunction to prevent one claiming the right of eminent domain from going upon the property or making use of it. *Coastal States Gas Producing Co. v. Miller*, 329 S.W.2d 853, 858 (Tex. 1959) (orig. proceeding).

We considered the application of Article 3269 in *Brazos River Conservation & Reclamation District v. Costello*, 142 S.W.2d 414, 416 (Tex. App.—Eastland) (*Costello I*), *rev'd*, 143 S.W.2d 577 (Tex. 1940), in which property owners obtained an injunction that prevented the BRCRD from flooding their land by closing openings in a dam. The BRCRD filed a cross-action for condemnation of the property under Article 3269. *Id.* at 418.

We noted that Article 3264 of the Revised Civil Statutes (which is now part of the Standard Procedure set out in Chapter 21) "provide[d] the familiar procedure for condemnation, consisting of an application for, and appointment of, commissioners, notices, hearing, award, etc." *Id.* at 417. Article 3269, however, "provide[d] a procedure for condemnation complete in itself, and alternative to that provided in the preceding Articles 3264 to 3268, inclusive." *Id.* at 418. We held that, if Article 3269 permitted the BRCRD to condemn by cross-action, the law was

9

unconstitutional because it would leave to the trial court's discretion whether any security should be deposited. *Id.* at 421.

The supreme court reversed our conclusion that Article 3269 was unconstitutional and noted that "[t]he legislature, in the exercise of its power, has authorized in Article 3269 condemnation proceedings in the District Court on cross actions." *Brazos River Conservation & Reclamation Dist. v. Costello*, 143 S.W.2d 577, 580 (Tex. 1940) (*Costello II*). The supreme court held that "[c]learly the object of Article 3269 is to expedite the determination of all matters to which it relates." *Id.* Further, a fair and reasonable construction of Article 3269:

> [M]eans that under same the District Court is vested with jurisdiction to determine the questions in dispute and to require the party instituting such condemnation proceedings to give adequate security for the property sought to be condemned.

*Id.* The supreme court summarized that all that the property owners could demand under Article 3269 was that the BRCRD comply with any orders that the district court made. *Id.* Once the BRCRD had done so, it would be entitled to take possession of the property "pending the final hearing of the condemnation proceedings on the merits of the case." *Id.*

In *Costello II*, the supreme court did not disturb our conclusion in *Costello I* that Article 3269 was a procedure "complete in itself" and alternative to the standard condemnation procedure. The Beaumont, Waco, and Houston First Courts of Appeals also concluded that the requirements of the standard condemnation procedure did not apply to condemnations sought by counterclaim or cross-action under Article 3269. *See Root Co. v. Montgomery Cty. Drainage Dist. No. 6*, 584 S.W.2d 500, 502–03 (Tex. App.—Beaumont 1979, no writ) (noting that bona fide effort to negotiate was "not a prerequisite of a suit that comes within" Article 3269); *Gardner v. City of Hamilton*, 536 S.W.2d 422, 424–25 (Tex. App.—Waco 1976, writ ref'd n.r.e.) (Article 3269 "does not contain a requirement that the condemnor,

before filing its condemnation proceeding in District Court follow the requirements it would be required to follow if it were filing an initial conventional condemnation suit."); *S. Pac. Transp. Co. v. Cty. of Harris*, 508 S.W.2d 484, 485–86 (Tex. App.— Houston [1st Dist.] 1974, writ ref'd) ("Article 3269 does not contain a requirement that the condemnor, before filing its condemnation proceeding in the district court, shall have failed to agree with the landowner on the amount of damages nor a requirement that the district judge appoint special commissioners to assess those damages."). Clearly, when the legislature enacted Chapter 21 in 1984, the existing state of the law allowed a condemnor to bring a counterclaim for condemnation in a suit brought by the property owner for damages or injunctive relief without following the standard condemnation proceeding.

Chapter 21 did not change this law. In Chapter 21, the legislature gave jurisdiction over a condemnation proceeding (1) to a district court or a county court at law after the Standard Procedure is followed and a party has filed objections to the special commissioners' award and (2) to the district court by "petition, cross-bill, or plea of intervention" in a case in which the condemnor is a party and that involves a claim for damages based on the condemnor's possession of the property or for injunctive relief to prevent the condemnor from entering or using the property pursuant to its eminent domain authority. If a condemnor was required to follow the Standard Procedure before it filed an alternative pleading for condemnation in a suit governed by Section 21.003, a district court would acquire jurisdiction over the claim when objections were filed to the special commissioners' award. That is, the district court would acquire jurisdiction over the counterclaim for condemnation pursuant to the Standard Procedure, not pursuant to Section 21.003. Therefore, Section 21.003 has meaning only if it confers jurisdiction on the district court to consider a condemnation counterclaim that has not followed the Standard

11

Procedure.[3]  *See Smith v. Gulf States Utils. Co.*, 616 S.W.2d 300, 305 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (concluding that Article 3269 did not confer original jurisdiction on a district court that had already acquired jurisdiction following a condemnation conducted pursuant to the Standard Procedure).

We hold that, because ETP filed a counterclaim for condemnation in a suit that falls under Section 21.003, Relators were not required to complete the Standard Procedure for condemnation before they requested that Judge Smith set security to protect Real Parties in Interest from damages due to the condemnation.  Accordingly, Judge Smith had jurisdiction to determine the counterclaim.  *See* PROP. § 21.003; *Costello II*, 143 S.W.2d at 480.  Further, Judge Smith had a ministerial duty to fix the amount of security to protect Real Parties in Interest during the proceedings.  *See Adams*, 279 S.W.2d at 314; *see also Jefferson Cty. Drainage Dist. No. 6 v. Gary*, 362 S.W.2d 305, 307 (Tex. 1962) (orig. proceeding) (noting that, because the condemnor's request that the trial court set security complied literally with statute, it was "the ministerial duty of the District Court to comply therewith").  Judge Smith abused his discretion when he failed to do so.

The second question is whether Relators have an adequate remedy by appeal.  The adequacy of an appellate remedy depends heavily on the circumstances and requires a balancing of the benefits of mandamus review against the detriments.  *In re Coppola* 535 S.W.3d 506, 509 (Tex. 2017) (orig. proceeding) (per curiam); *In re Prudential*, 148 S.W.3d at 136.  The supreme court has held that a condemnor is entitled to relief by mandamus from the refusal of a trial court to set security pursuant

---

[3]Real Parties in Interest contend that such an interpretation of the statute allows a condemnor to "avoid the time and expense associated with the Section 21 procedure and just trespass, wait for the owner to file suit, post arbitrary security, and take possession."  However, the legislature has determined that, when a suit falls under Section 21.003, the district court should be allowed to expeditiously consider all issues before it, including a counterclaim for condemnation.  PROP. § 21.003; *Costello II*, 143 S.W.2d at 580.  We interpret the statute as written and do not choose between these competing policies.  *Creative Oil & Gas*, 2019 WL 6971659, *4.

12

to Article 3269. *Adams*, 279 S.W.2d at 314; *see also Gary*, 362 S.W.2d at 207; *Coastal States*, 329 S.W.2d at 860. We hold that the same reasoning applies to a counterclaim for condemnation brought pursuant to Sections 21.003 and 21.017.

Real Parties in Interest sued Relators and requested damages and injunctive relief based on ETP's use of the pipeline to transfer crude oil. Relators brought a counterclaim in which they asserted the power of eminent domain to condemn the right to transfer crude oil through the pipeline and requested that Judge Smith set security in accordance with Sections 21.003, 21.017, and 21.064(b) of the Property Code. Relators are entitled to relief by mandamus from Judge Smith's refusal to do so.

### This Court's Ruling

We deny Relators' petition for writ of mandamus to the extent that they request that we order Judge Smith "to refuse to issue any injunction to cease use of the pipeline in place and subject to the condemnation proceeding initiated by cross-claim in this matter." We conditionally grant the petition for writ of mandamus as to the portion of the December 18, 2019 order in which Judge Smith denied Relators' motion to set security. A writ of mandamus will issue only if Judge Smith does not vacate that portion of the order and set adequate security by February 13, 2020.

JOHN M. BAILEY

February 3, 2020                    CHIEF JUSTICE

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.