**Affirmed and Memorandum Opinion filed July 10, 2025.**



In The

# Fifteenth Court of Appeals

___

### NO. 15-24-00105-CV

___

**MARC WILLIAMS, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF TRANSPORTATION; AND KYLE MADSEN, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE RIGHT OF WAY DIVISION OF THE TEXAS DEPARTMENT OF TRANSPORTATION, Appellants**

**V.**

**MMP PROPERTIES LLC, Appellee**

___

**On Appeal from the 285th District Court**
**Bexar County, Texas**
**Trial Court Cause No. 2023CI26760**

___

### MEMORANDUM OPINION

Appellants Marc Williams and Kyle Madsen appeal the denial of their plea to the jurisdiction in this suit to determine whether Appellee MMP Properties, LLC relinquished its right of possession over certain property by dedicating that property for public use. MMP sued Appellants Williams and Madsen in their official

capacities as Executive Director of the Texas Department of Transportation (TxDOT) and Director of TxDOT's Right of Way Division, respectively, for a declaratory judgment stating that MMP did not relinquish its right of possession. Williams and Madsen (collectively, the TxDOT Officials) filed a plea to the jurisdiction based on sovereign immunity, and the State intervened seeking condemnation under the Property Code. The trial court granted a partial summary judgment on the declaratory judgment claim and denied the TxDOT Officials' plea to the jurisdiction. The State's condemnation action and MMP's attorney's fee request remain pending in the trial court.

Reviewing the jurisdictional allegations, taking them as true, and construing them in favor of the plaintiff, MMP, we conclude the trial court did not err in denying the plea to the jurisdiction. We affirm the trial court's interlocutory order denying the plea.

**BACKGROUND**

## I.     The Disputed Land

Since 2005, MMP Properties has owned 17 acres of land that abuts Loop 1604, a highway in Bexar County. In 2017, MMP wanted to develop the property and began working on a plat to submit to the City of Converse. At some point in the platting process, MMP learned that TxDOT intended to expand Loop 1604 and MMP might lose a portion of its acreage to the highway expansion. In the early development stages, Craig Scott, a broker for MMP, sent a survey of the property to Richard De La Cruz at TxDOT and asked that De La Cruz put TxDOT's preliminary future right-of-way (ROW) for Loop 1604 on the survey. According to Scott, MMP had several convenience stores showing interest in its property and needed to determine how much property would be lost to the Loop 1604 expansion.

2

After receiving information from a TxDOT engineer, MMP's engineer submitted a plat of the 17 acres dividing the property into seven lots. Six of the seven lots range in size from 1.788 acres to 2.848 acres. Lot 7, Block 1 is 4.171 acres. The plat was recorded in the Bexar County Plat Records, and approved by the City of Converse in 2017. The plat contained a description of the Property as follows:

> A 17.05 acre tract of land, establishing and consisting of 1.788 acres Lot 1, 1.450 acres Lot 2, 2.434 acres Lot 3, 2.848 acres Lot 4, 2.181 acres Lot 5, 2. 181 acres Lot 6 and 4.171 acres of a right-of-way dedication being Lot 7, Block 1, being a portion of a 24.718 tract of land conveyed to MMP Properties, LLC of record in volume 11383, page 2096 of the official public records of Bexar County, Texas.

The plat also contained a statement by MMP's owner stating that he "dedicate[d] to the use of the public all streets, alleys, watercourses, drains, easements, and public places." The schematic for Lot 7 reflected that Lot 7 contained a "Future R.O.W. Dedication." TxDOT alleged that by describing Lot 7, Block 1 as "4.171 acres of a right-of-way dedication," dedicating all public places to the public, and designating Lot 7 as a future right of way designation, MMP has presently and unequivocally dedicated Lot 7 to public use. MMP contends that, understanding that the Loop 1604 project was not yet funded, MMP did not dedicate the land to public use, but rather set aside the land that the State planned to acquire by eminent domain in the future.

## II.   Early Negotiation for Lot 7

In 2020, Scott Laplante, the project manager for a TxDOT contractor, sent a letter to MMP in which TxDOT notified MMP that it would be making improvements to Loop 1604 in Bexar County. Attached to the letter was an offer to purchase Lot 7 for $802,646.00 based on the State's appraisal of the property. MMP made a counteroffer of $3,761,928.60, which was rejected by TxDOT. The

3

following year Laplante notified MMP that TxDOT was suspending work on Loop 1604 due to budget shortfalls.

Back on track in July 2022, TxDOT again offered $802,646.00 for Lot 7 and MMP again made the same counteroffer of more than $3 million. In rejecting MMP's counteroffer, Laplante sent an email on October 19, 2022, informing MMP that TxDOT believed "the dedication shown on the plat gives TxDOT the legal right to construct on the property without needing to purchase it."

On May 26, 2023, TxDOT rescinded its previous offers to purchase Lot 7. On August 17, 2023, TxDOT notified MMP that the plat depicted a public dedication of Lot 7 and instructed MMP to remove all improvements from the "state right of way" within one month.

## III. The Litigation

MMP subsequently filed an original petition for declaratory relief and temporary injunction naming as defendants Marc Williams and Kyle Madsen in their official capacities as directors at TxDOT.[1] MMP sought declarations that (1) it had not dedicated Lot 7 for public use; (2) the TxDOT Officials acted without legal authority in their communications with MMP; and (3) the TxDOT Officials were required to proceed under the statutory condemnation process before entering, taking possession of, or beginning highway construction on Lot 7.

In response to MMP's petition, the TxDOT Officials filed a plea to the jurisdiction alleging that sovereign immunity deprived the trial court of jurisdiction over MMP's claims. In the alternative, TxDOT intervened seeking to condemn Lot 7 pursuant to Section 21.017 of the Property Code. *See* Tex. Prop. Code § 21.017

---

[1] The record reflects that MMP did not pursue its request for injunctive relief and has not raised the issue of injunctive relief on appeal.

4

(permitting state or a political subdivision of the state to assert a condemnation claim through a plea of intervention).

MMP filed a motion for summary judgment in which it alleged it was entitled to judgment as a matter of law because it did not expressly or impliedly dedicate Lot 7 to public use. MMP further challenged the TxDOT Officials' plea to the jurisdiction, asserting that declaratory relief is available against governmental officials who acted without legal authority, or ultra vires, in their communications and actions regarding the property. The TxDOT Officials responded to MMP's motion for summary judgment and filed a motion to dismiss for want of jurisdiction in which they alleged entitlement to sovereign immunity because they were at all times engaged in the performance of their governmental functions.

The trial court denied the TxDOT Officials' plea to the jurisdiction, granted MMP's motion for summary judgment, and rendered declaratory judgment in favor of MMP. The TxDOT Officials filed this interlocutory appeal of the trial court's denial of their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).[2] The partial summary judgment is interlocutory because the

---

[2] After the parties filed their opening briefs the Supreme Court of Texas transferred this appeal from the Fourth Court of Appeals to this Court pursuant to Rule 27a of the Texas Rules of Appellate Procedure. *See* Misc. Dkt. No. 24-9073 (Sept. 30, 2024). The TxDOT Officials filed a reply brief in which they assert, inter alia, that pursuant to Texas Rule of Appellate Procedure 41.3, this Court must decide the case in accordance with precedent of the Fourth Court of Appeals if this Court's decision would be otherwise inconsistent with the Fourth Court's precedent. We disagree. When the Supreme Court transfers appeals for equalization purposes, Rule 41.3 "ensures that the 'transfer will not produce a different outcome, based on application of substantive law, than would have resulted had the case not been transferred.'" *Mitschke v. Borromeo*, 645 S.W.3d 251, 254 (Tex. 2022) (quoting cmt. to Tex. R. App. P. 41.3). Because this case was transferred as being within the exclusive intermediate appellate jurisdiction of the Fifteenth Court of Appeals, and not for docket equalization, we are not bound by Rule 41.3 in deciding today's case. *See* Tex. R. App. P. 27a(b)(2) (excluding docket-equalization transfers from those appeals transferred because they fall within the exclusive jurisdiction of this Court). The risk that the transfer would produce a different outcome does not exist in cases transferred to the Fifteenth Court that fall within our exclusive jurisdiction. *See In re Dallas Cnty.*, 697 S.W.3d 142, 146 (Tex. 2024) (recognizing that

attorney's fees issue remains pending in the trial court and is not at issue in this appeal.

ANALYSIS

The TxDOT Officials challenge the trial court's denial of their motion to dismiss for want of jurisdiction on the grounds that (1) MMP offered to dedicate the property as a public right of way upon recording the plat; (2) TxDOT's written acceptance of the dedication was not an ultra vires act; and (3) the State's plea in intervention did not waive the TxDOT Officials' sovereign immunity. Before we address the TxDOT Officials' issues we will address MMP's assertion that this Court lacks jurisdiction over this interlocutory appeal. *See Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 355 (Tex. 2024) (courts must resolve any jurisdictional challenges before turning to the merits).

## I.    Appellate Jurisdiction

"Appellate review is ordinarily limited to final judgments." *Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, 690 S.W.3d 32, 37 (Tex. 2024). An appellate court has no jurisdiction to review an interlocutory order unless jurisdiction is conferred by statute. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). One such statute is Civil Practice and Remedies Code Section 51.014(a)(8), which provides that "[a] person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . grants or denies a plea to the jurisdiction by a governmental unit[.]"

MMP contends that we lack jurisdiction over this appeal because "no 'governmental unit' filed a plea to the jurisdiction in this case[.]" Citing *Koseoglu*, MMP argues that the TxDOT Officials cannot pursue an interlocutory appeal from

---

this Court has statewide jurisdiction "for a range of cases that implicate the State's interests.").

6

the trial court's denial of their plea to the jurisdiction because Section 51.014(a)(8) only permits an interlocutory appeal if a "governmental unit" filed a plea to the jurisdiction. Because the TxDOT Officials are not a "governmental unit," MMP contends they cannot appeal the trial court's denial of their plea.

In *Koseoglu*, the Court rejected the argument MMP makes here, holding that "[a] person sued in an official capacity should be able to appeal the denial of a jurisdictional plea in the same way as his employing governmental unit because both defendants' interests in pleading sovereign immunity are identical. We are aware of no sound rationale for distinguishing one from the other." *Koseoglu*, 233 S.W.3d at 845. We therefore have jurisdiction over the TxDOT Officials' interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

MMP asserts that *Koseoglu* is distinguishable for two reasons. First, it maintains that the Court held only that a governmental employee may appeal an order denying a plea to the jurisdiction filed by the governmental unit. In *Koseoglu*, both the University—the governmental unit—and the government official filed pleas to the jurisdiction. *Koseoglu*, 233 S.W.3d at 838. MMP notes that in this case, TxDOT, the governmental unit, was not sued and thus did not file a plea. However, the *Koseoglu* Court's holding was not so narrow. *Id.* at 845. The Supreme Court subsequently held that the right to interlocutory appeal afforded under Section 51.014(a)(8) extends to an employee of a governmental unit separate from the governmental unit's plea. *See Texas Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 694 (Tex. 2007).

Second, MMP contends that unlike in this case, the *Koseoglu* official was not sued for ultra vires actions. *See generally* 233 S.W.3d at 835. MMP argues that a portion of the *Koseoglu* Court's reasoning on the scope of Section 51.014(a)(8) was that a suit against the official is essentially a suit against the governmental unit to

7

which the same immunity also applies. *See id*. at 844. MMP asserts that this principle cannot apply to the present case because it is suing the TxDOT Officials for ultra vires acts. *See generally Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011).

MMP relies on the statement in *Bailey* that, " [a] government employee has the same immunity from suit against him in his official capacity as his employer, unless he has acted ultra vires." *Id*. In the next sentence, however, *Bailey* recognizes, "Even then, the suit is, for all practical purposes, against the state." *Id*. (internal quotations omitted). *Bailey* addressed the impact on the statute of limitations when a governmental unit is substituted for a government employee after limitations expired. *Id*. at 397–99. *Bailey* addressed the statute of limitations; it did not address whether a government official sued for ultra vires acts could pursue an interlocutory appeal of the trial court's denial of the official's motion to dismiss for want of jurisdiction. *Id*.

MMP's jurisdictional argument overlaps with the merits of the TxDOT Officials' challenge to the trial court's jurisdiction. As discussed below, the TxDOT Officials contend that the evidence did not establish that they committed ultra vires acts. We necessarily have jurisdiction to consider that underlying contention as part of our jurisdiction, under Section 51.014(a)(8), to determine whether the TxDOT Officials are protected by sovereign immunity. *See In re Griffith*, 485 S.W.3d 529, 533 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding an appellate court may consider merits of ultra vires claims for purposes of considering its own jurisdiction). Therefore, we reject MMP's challenge to our jurisdiction.

As this Court is vested with jurisdiction over the TxDOT Officials' interlocutory appeal, we proceed to address their assertions that the trial court erred in denying their motion to dismiss for lack of jurisdiction.

## II.     The TxDOT Officials' Motion to Dismiss

In their first and second issues the TxDOT Officials argue MMP's declaratory judgment action must be dismissed because the evidence establishes the State has a superior right to possession and the Officials' acceptance of MMP's offer of public dedication was not outside their authority.

### A.     Standard of Review

Whether a trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Generally, sovereign immunity deprives a trial court of jurisdiction over a lawsuit in which a party has sued the State or a state agency unless the Legislature has consented to suit. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–28. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When "the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). When a "jurisdictional challenge implicates the merits of

9

the [plaintiff's] cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Miranda*, 133 S.W.3d at 227.

In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The plaintiff has the burden to adduce evidence to "raise a fact question on the jurisdictional issue." *Id.* The evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228.

### B.    The Ultra Vires Claims

MMP's live pleading invokes the Uniform Declaratory Judgments Act (UDJA), seeking a declaration that it did not dedicate Lot 7 for public use. The UDJA waives sovereign immunity for certain claims, but it is not a general waiver of sovereign immunity. The UDJA provides "only a limited waiver for challenges to the validity of an ordinance or statute." *Morath v. Kingsville Indep. Sch. Dist.*, 710 S.W.3d 918, 929 (Tex. App.—15 Dist. 2025, no pet.) (quoting *State v. Zurawski*, 690 S.W.3d 644, 660 (Tex. 2024)). MMP does not challenge the validity of an ordinance or statute; therefore, the UDJA does not waive TxDOT's sovereign immunity. *Id.*

Sovereign immunity, however, does not bar a suit that seeks to bring government officials into compliance with statutory or constitutional provisions.

10

*Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019). Such claims, known as ultra vires claims, must be brought against government officials in their official capacity and may only seek prospective injunctive remedies. *Id*. MMP asserts the trial court has jurisdiction over the TxDOT Officials pursuant to the ultra vires exception. To fall within this ultra vires exception, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). A government official acts without legal authority if he or she exceeds the bounds of the granted authority or if his or her acts conflict with the law itself. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

In this case, whether MMP has sufficiently presented evidence to demonstrate subject matter jurisdiction over an ultra vires claim overlaps with the substantive issue of whether the TxDOT Officials established as a matter of law that MMP offered to publicly dedicate Lot 7. The TxDOT Officials assert that MMP's declaratory-judgment action is actually in the nature of a trespass to try title action. We agree. MMP's pleading alleged claims against the TxDOT Officials only in their official capacity; it alleged that the TxDOT Officials wrongfully asserted a state right of way on Lot 7.

A trespass to try title action is the method for determining title to lands, tenements, or other real property and the exclusive remedy for resolving competing claims to property. Tex. Prop. Code § 22.001. "A suit to recover possession of property unlawfully claimed by a state official is essentially a suit to compel a state official to act within the official's statutory or constitutional authority, and the remedy of compelling return of land illegally held is prospective in nature." *Tex.*

*Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 393 (Tex. 2011).[3] By requesting declarations that MMP did not dedicate Lot 7 to public use precluding TxDOT from possessing or owning the property, MMP effectively seeks adjudication of the title or possession dispute in its favor. *See id*. at 388–90 (evaluating plea to jurisdiction on suit as trespass to try title action based on nature of dispute—rival claims to ownership of property—despite plaintiff's pleading declaratory-judgment action).

When officials possess a plaintiff's property under an incorrect claim that the governmental entity holds title or possession those officials are acting without legal authority; the officials' claims that title or possession "is on behalf of" the entity will not bar the suit. *See id*. at 393 (citing *Heinrich*, 284 S.W.3d at 370–74; *State v. Lain*, 349 S.W.2d 579, 581–83 (Tex. 1961)). In other words, the TxDOT Officials are not protected by sovereign immunity if MMP raised a fact question on whether MMP or TxDOT is in lawful possession of Lot 7. *See Lain*, 349 S.W.2d at 581–82. If the evidence raises a fact question on whether MMP offered to publicly dedicate Lot 7, then the trial court has jurisdiction to resolve that fact question in determining if the TxDOT Officials acted without legal authority in accepting the offer.

This case turns on whether MMP's plat establishes an offer to dedicate Lot 7 as a public right of way. If the plat unambiguously establishes an offer to dedicate, then the TxDOT Officials did not commit ultra vires acts in accepting the dedication, if the dedication was accepted before any such offer was revoked. *See Sawyer Tr.*, 354 S.W.3d at 393. If fact questions have been raised as to whether the plat establishes an offer to dedicate, MMP's action against the TxDOT Officials may

---

[3] The Court in *Sawyer Trust* held that a suit against the State to determine title to land is barred by sovereign immunity, but a suit against governmental officials is not barred if the plaintiff establishes the officials' possession is wrongful. *Sawyer Tr.*, 354 S.W.3d at 390, 394.

12

proceed and we leave resolution of that issue to the fact finder. *See Miranda*, 133 S.W.3d at 227–28 (requiring trial court to deny motion to dismiss based on jurisdiction and allow fact finder to decide fact issue). With that framework in mind, we proceed to review the evidence to determine whether a fact question was raised as to whether the plat established an offer of public dedication.

### C.    Public Dedication

"'Dedication' is the act of appropriating private land to the public for any general or public use." *Hatton v. Grigar*, 66 S.W.3d 545, 554 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public." *Keenan v. Robin*, 709 S.W.3d 595, 602 (Tex. 2024) (quoting *Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 906 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). There are two types of dedications, express and implied. *Shelton v. Kalbow*, 489 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Whether express or implied, dedication of private land for a public purpose generally requires proof of offer and acceptance. *Keenan*, 709 S.W.3d at 602.

A dedication for public use requires the following proof: (1) the person who makes the dedication must have the ability to do so; (2) there must be a public purpose served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of the offer. *PSQ Barbie, LP v. Howard*, No. 02-22-00050-CV, 2023 WL 1456928, at *9 (Tex. App.—Fort Worth Feb. 2, 2023, no pet.) (mem. op.). In this case, the parties dispute the third and fourth elements of offer and acceptance.

The TxDOT Officials asserted that, "[t]he plat exclusively refers to Lot 7 as a dedication, referencing it as both a right-of-way dedication and future right-of-way dedication." In support of their motion to dismiss the TxDOT Officials attached the

13

recorded plat, several email exchanges between MMP's engineer and TxDOT, preliminary depictions of TxDOT's expanded right-of-way, a TxDOT "letter of concurrence," City of Converse Planning and Zoning Commission notes showing approval of the plat, City of Converse Council meeting notes, and an affidavit of State Public Right of Way.

The TxDOT Officials' evidence reflects email communication from Scott, an MMP broker, to De La Cruz at TxDOT requesting information on TxDOT's "preliminary future ROW" to aid in determining "how much acreage [the owner] will be losing to the right of way." Also attached is an email from Benjamin Bunker, a project manager, telling De La Cruz that he was "planning to submit an exhibit with the driveway location to get TxDOT approval." Another email explained that the project manager was trying to avoid issues for the future Loop 1604 expansion. The TxDOT Officials assert this evidence establishes as a matter of law that MMP offered to publicly dedicate Lot 7.

MMP's summary-judgment evidence consisted of the recorded plat, an appraisal sent from TxDOT to MMP, several letters reflecting TxDOT's initial negotiation to condemn Lot 7 under the Property Code, TxDOT's letter alleging MMP's encroachment on the Property, TxDOT's letter rescinding its monetary offer for Lot 7, and a receipt showing MMP paid 2023 taxes on the Property. MMP asserted that it established as a matter of law that it did not expressly or impliedly make an offer to dedicate the Property, and that the TxDOT Officials failed to establish that MMP had intent to dedicate the Property for public use. MMP further asserted that as a matter of law it did not dedicate the Property by statute.

The TxDOT Officials assert that they established the elements of an offer of a public dedication and acceptance of that offer as a matter of law. As such, they did not act outside their legal authority and sovereign immunity deprives the trial court

14

of subject matter jurisdiction over MMP's declaratory judgment action. MMP responds, asserting the elements of offer and acceptance are lacking, or at the very least, the parties' evidence raises a fact question on whether MMP publicly dedicated Lot 7.

Both parties primarily rely on the recorded plat, which reflects the subdivision of the Property with several smaller Lots, four of which are adjacent to the strip of land designated as Lot 7:



The plat described the property as follows:

> A 17.05 acre tract of land, establishing and consisting of 1.788 acres Lot 1, 1.450 acres Lot 2, 2.434 acres Lot 3, 2.848 acres Lot 4, 2.181 acres Lot 5, 2. 181 acres Lot 6 and 4.171 acres of a right-of-way dedication being Lot 7, Block 1, being a portion of a 24.718 tract of land conveyed to MMP Properties, LLC of record in volume 11383, page 2096 of the official public records of Bexar County, Texas.

The recorded plat also contained a statement signed by the owner of MMP dedicating all streets, alleys, watercourses, drains, easements, and public places to the public:

> I, Akber Ali the owner of the land shown on this plat, and designated herein as Lots 1, 2, 4, 5, 6 and 7 of the subdivision to the City of Converse, Texas, County of Bexar, Texas, and whose name is subscribed hereto, do hereby subdivide such property and dedicate to the use of the public all streets, alleys, watercourses, drains, easements, and public places thereon shown for the purposes and consideration therein expressed.

Charles Benavidez, a TxDOT engineer, filed a corrected "Affidavit of State Public Right of Way," in which he referred to the plat shown above and purported to accept MMP's offer of public dedication:

> It is the purpose of this affidavit to establish and place of record in the Official Public Records of Real Property of Bexar County, Texas, a legal description of a strip of land dedicated to the public for future right of way purposes located in Bexar County, Texas, as evidenced by dedication document filed of record in the Map and Plat Official Records of said County, in Book 9718, Page 156, Document No. 20170147574. The Texas Department of Transportation hereby accepts the dedication of this land for highway right of way purposes.

The affidavit then described Lot 7, Block 1 as the land that had been dedicated.

Whether a public right of way has been acquired by dedication is generally a question of fact. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex.1978) ("The intent of the grantor is a question of fact."). "An express dedication requires the showing of a declaration or some express manifestation of the purpose to devote the land to public use." *Howard*, 2023 WL 1456928, at *9 (citation omitted). The recorded plat in this case contains language purporting to dedicate Lot 7 as a right of way dedication ("right-of-way dedication being Lot 7, Block 1"). The plat also contains language that dedicates "streets, alleys, watercourses, drains, easements, and public places" to the public. Finally, the plat contains language that Lot 7 is a "future right of way."

16

The express declarations in the plat lead to potentially contradictory conclusions: while some portions of the plat express public dedication, other portions suggest a public dedication is anticipated in the future. Much like an unenforceable "agreement to agree," the statements in the plat leave material matters open for future adjustment. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree."). Based on this record, unresolved fact issues remain concerning the dedication and must be submitted to the fact finder. As a result, the trial court correctly denied the TxDOT Officials' plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28 (establishing that if the evidence creates a fact question, the trial court may not grant the plea).

The TxDOT Officials make several arguments in support of their position that MMP dedicated Lot 7 to the public as a matter of law. We address their arguments in turn.

### D. Extrinsic Evidence does not Establish MMP's Intent as a Matter of Law.

The TxDOT Officials argue that extrinsic evidence reflects MMP's intent to make an offer to dedicate Lot 7 to public use. The owner's intent, when not expressly stated, may be implied from the owner's conduct. *Viscardi*, 576 S.W.2d at 19.

The TxDOT Officials first assert that Lot 7 currently serves as an improved drainageway with concrete culverts, which meets the City of Converse's definition of a public right of way. The TxDOT Officials also argue that other governmental entities have placed utility easements on Lot 7 and that those easements "typically" run along right-of-way boundaries in Texas. In that regard, the officials seem to raise an argument akin to estoppel. In other words, having permitted use of Lot 7 as an

17

improved drainageway and permitting utility easements, MMP is estopped from claiming it did not offer to dedicate the property to public use. MMP responds that depicting the utility easements on its plat indicates that MMP did not intend to dedicate all of Lot 7 to the public.

Contrary to the TxDOT Officials' assertion, an offer of intent to dedicate must be shown by something more the owner's acquiescence. *Lee v. Uvalde Cnty.*, 616 S.W.2d 367, 372 (Tex. App.—Tyler 1981, no writ). A public dedication requires valuable land rights passing from the owner; therefore, no presumption of an intent to dedicate arises unless clear evidence establishes such an intent. *Id*. The extrinsic evidence relied on by the TxDOT Officials does not conclusively establish MMP's intent to publicly dedicate Lot 7. If anything, it raises further fact questions as to MMP's intent.

The TxDOT Officials further assert that the sale of Lots 2 and 3 to a Burger King restaurant and a Valero gas station provide evidence of MMP's intent to dedicate Lot 7. The TxDOT Officials rely on Supreme Court authority, which states that if a landowner sells property that abuts a street, with reference to a front or rear on that street, "this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever." *Adams v. Rowles*, 228 S.W.2d 849, 851 (Tex. 1950). The TxDOT Officials allege that Lots 2 and 3 were sold in reliance on the dedication of Lot 7 because it is "unlikely that either Burger King or Valero would have been interested" in the lots if those lots were not adjacent to a highway. Speculation about the motivation of purchasers of lots does not show MMP's intent to expressly dedicate Lot 7. *See Henderson v. Frio Cnty.*, 362 S.W.2d 406, 409 (Tex. Civ. App.—San Antonio 1962, writ ref'd n. r. e.) (establishment of facts constituting dedication cannot be left to conjecture). This extrinsic evidence at most raises a fact issue on MMP's intent.

18

## E.    The TxDOT Officials' Authority is Distinguishable.

The TxDOT Officials direct us to *State v. NICO–WF1, L.L.C.*, 384 S.W.3d 818, 821 (Tex. 2012), asserting that MMP cannot place conditional limits on the public's use of Lot 7. In *NICO*, a city boulevard was dedicated for public use in 1928. *Id*. at 820. The dispute centered around whether a portion of NICO's building encroached on the public street because the public dedication limited the road's width to the existing curb line. *Id*. The trial court granted summary judgment for NICO, concluding that the street was subject to a curb-line condition that limited the roadway to a maximum width. *Id*. at 820–21. The court of appeals affirmed but also held that NICO's building did not encroach on the public right of way because the extra distance between the curbs and outer street lines "[were] not dedicated for any public use whatsoever." *Id*. It was in the context of addressing this additional holding by the court of appeals that the Supreme Court held that "a grantor cannot dedicate land for a public purpose and yet retain control over such land in derogation of the public right conveyed." *Id*. at 823.

The TxDOT Officials' reliance on *NICO* is misplaced. *NICO* involved an express dedication with clearly defined boundaries and a lower court ruling that misapplied the law in determining the extent of those undisputed boundaries. *See id*. at 820–21. In this case, there is a fact issue on whether an express dedication was made in the first place.

Next, the TxDOT Officials assert that the facts evidencing MMP's intent to dedicate Lot 7 are validated by the decision in *Tex. Dep't of Transp. v. Robert Dixon Tips Props., LLC*, No. 04-21-00430-CV, 2023 WL 2396807, at *5 (Tex. App.—San Antonio Mar. 8, 2023, pet. denied) (mem. op.). In that case, the underlying dispute stemmed from a TxDOT project to expand a portion of a highway that abutted property owned by Tips Properties. *Id*. at *1. Tips Properties sold parts of its property

19

to TxDOT but did not sell the disputed portion of a boulevard, alleging that the boulevard was a private roadway. *Id*. TxDOT contended the boulevard was publicly dedicated when the subdivision in which it was located was created. *Id*. The plat creating the subdivision stated in part, "the owners do by this instrument dedicate for public use and for the use of the adjoining property owners the Streets shown on said plat[.]" *Id*. at *2 (alteration in original). The Fourth Court concluded that the plat in that case showed clearly demarcated streets and the accompanying language dedicating streets to the public constituted an express offer of dedication by the owners. *Id*. at *5. In rejecting Tips Properties' argument that a fact question was raised, the Fourth Court dismissed the authority relied on by Tips Properties as "merely examples of when a fact question exists as to whether there has been a dedication or an easement." *Id.* at *4. Similarly, the decision in *Tips Properties* does not require us to conclude that the plat in this case constitutes an express dedication. The plat here does not show clearly demarcated streets and does not contain unequivocable language dedicating Lot 7 to the public. *Tips Properties* is another example of when a plat may constitute an express dedication and no fact question is raised, but it does not control the outcome in this case.

We conclude a fact issue was raised as to whether MMP intended an offer of express dedication of Lot 7 to the public. We overrule the TxDOT Officials' first issue. Having concluded that a fact issue was raised on whether MMP offered to dedicate Lot 7, we need not address the TxDOT Officials' second issue in which they assert their written acceptance of MMP's "offer" did not waive sovereign immunity.

## III.    The State's Alternative Plea in Intervention

In an alternative issue, the TxDOT Officials assert that the State's intervention to condemn Lot 7 does not waive their sovereign immunity. In the trial court, MMP

20

alleged that TxDOT waived the sovereign immunity of its officials by intervening to seek condemnation under the Property Code. Citing *Reata Construction Co. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006), MMP asserts that TxDOT waived its immunity by seeking affirmative relief.

The Texas Supreme Court demarcated important limits on the doctrine of sovereign immunity in *Reata*, holding that "where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id*. at 376–77. When a governmental entity initiates litigation, it participates as an ordinary litigant without the benefit of governmental immunity when an adverse party asserts a claim that is "germane to, connected with, and properly defensive" to the State's action. *Hughes v. Tom Green Cnty*., 573 S.W.3d 212, 219 (Tex. 2012).

This case is distinguishable from *Reata* and *Hughes* in that the Property Code specifically permits the State or a political subdivision of the State to intervene through an alternative pleading to condemn property. *See* Tex. Prop. Code § 21.017. Section 21.017 is intended to give the State the right to urge alternative and inconsistent remedies in the same cause and have both matters determined in one proceeding and at one time. *City of Houston v. Adams*, 279 S.W.2d 308, 312 (Tex. 1955). Therefore, by asserting an alternative counterclaim for condemnation, the State did not initiate litigation so as to trigger a waiver of immunity.

That does not change our disposition, however. Here, MMP seeks declaratory relief from the ultra vires acts of the TxDOT Officials, not the State itself. Ultra vires actions are not "suit[s] against the State within the rule of immunity of the State from

suit" because the "acts of officials which are not lawfully authorized are not acts of the State[.]" *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Ultra vires actions fall within an exception to sovereign immunity, so the trial court did not err by denying the plea to the jurisdiction.

## CONCLUSION

We affirm the trial court's order denying the TxDOT Officials' motion to dismiss.

/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.